107 A.3d 21

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Tyde PASTURE, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 9, 2014.

Decided Dec. 29, 2014.

442

Hugh J. Burns Jr., Esq., Ronald Eisenberg, Esq., Alison Jo Guest, Esq., Edward F. McCann Jr., Esq., Philadelphia District Attorney's Office, R. Seth Williams, Esq., for Commonwealth of Pennsylvania.

Karl Baker, Esq., Owen W. Larrabee, Esq., Jeffrey Paul Shender, Esq., Defender Association of Philadelphia, for Tyde Pasture.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice STEVENS.

In this discretionary appeal, we consider whether the Superior Court erred in making certain legal determinations leading it to vacate the judgment of sentence imposed upon Appellee Tyde Pasture following the revocation of his probation. We hold the Superior Court misapplied certain sentencing provisions, leading it to give insufficient deference to the revocation court's imposition of the sentence following the revocation of Pasture's probation, and for the reasons set forth

below, we vacate the Superior Court's order and reinstate Pasture's judgment of sentence entered on February 12, 2009.

## I.  Background

The facts upon which the lower tribunals based their decisions follow.  Pasture sexually molested his live-in paramour's daughter, beginning when she was nine years of age.  When the victim was eleven years old, she reported the molestation to her mother, and an investigation ensued.

██  Pasture eventually entered an *Alford* plea[1] to aggravated indecent assault and corruption of minors, 18 Pa.C.S. §§ 3125 and 6301, respectively, and following a hearing on July 20, 2004, he was deemed to be a "sexually violent predator" subject to the reporting requirements of the then current version of the Registration of Sexual Offenders Act, Megan's Law II, 42 Pa.C.S. §§ 9791–9799.9. On July 21, 2004, following a hearing, and with the trial court having the benefit of a pre-sentence investigation report ("PSI") the trial court sentenced Pasture to eleven and one-half months to twenty-three months in prison, to be followed by eight years of reporting probation, for the aggravated indecent assault conviction, and to a consecutive five years of reporting probation for the corruption of minors conviction.[2]  On direct appeal, the Superior Court affirmed Pasture's judgment of sentence, and this Court denied review.  *Commonwealth v. Pasture*, 898 A.2d 1132 (Pa.Super. filed March 8, 2006) (table), No. 2216

---

1. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).  In *Alford*, the U.S. Supreme Court explained that most guilty pleas consist of an express admission of guilt and the plea of *nolo contendere* is regarded as a tacit admission of guilt.  When a criminal defendant is unable or unwilling to admit to participating in acts constituting a crime, but the record contains strong evidence of guilt, the defendant may conclude that a guilty plea is in his or her best interests.  *Alford*, 400 U.S. at 37, 91 S.Ct. at 167.  Thus, a person entering an *Alford* plea claims innocence, but consents to the imposition of a prison sentence.

2. The parties negotiated that, if Pasture did not violate the terms of his probation within ten years, the remainder of his probationary term would convert into non-reporting probation.  *See* N.T. 7/21/2004, sentencing hearing, at 5.

EDA 2004 (unpublished memorandum), *appeal denied,* 588 Pa. 779, 906 A.2d 541 (2006).

After serving his sentence of incarceration, Pasture was released and began serving the probationary term of his sentence. One of the conditions of his probation was that he refrain from using drugs and alcohol, and accordingly, he was required to submit to random drug urinalysis tests. After several of these tests produced a positive result for marijuana and alcohol, the Commonwealth sought to revoke Pasture's probation.

At the ensuing February 12, 2009 probation revocation hearing, at which Pasture was represented by counsel, it was revealed that Pasture began using prohibited substances while on probation beginning in March of 2007, and when his probation officer discovered Pasture's substance use, he informed Pasture that he must cease using the substances or the trial court would be informed. N.T. 2/12/2009, probation revocation hearing, at 3. Accordingly, in August of 2007, Pasture entered an out-patient drug rehabilitation program, and he remained in treatment with negative drug urinalysis tests until January of 2008. *Id.* at 10. However, on February 7, 2008, Pasture was shot in the back, neck, and stomach, and he again began to use marijuana and alcohol. *Id.* at 3–5. Pasture admitted that he violated the terms of his probation by using marijuana and alcohol; however, he averred he used the substances solely to relieve the pain he suffered from his gunshot wounds. *Id.* at 2, 10. Pasture noted that he had been complying with all other conditions of his probation, including attending sex offender treatment, reporting to his probation officer, and making payment on arrears owed to the court. *Id.* at 9.

In response, the Commonwealth urged the revocation court not to accept Pasture's shooting injuries as an excuse for his prohibited substance use. *Id.* at 8. The Commonwealth noted Pasture had positive test results beginning in March of 2007, prior to being shot, and while Pasture did not use drugs while participating in out-patient drug treatment, he began using drugs again as soon as he completed his rehabilitation pro-

gram. *Id.* at 11. The Commonwealth also informed the revocation court that, despite Pasture's claims to the contrary, he was over $5,000 behind in payments owed to the court. *Id.* at 11.

At the conclusion of the hearing, the revocation court revoked Pasture's probation. The revocation court then sentenced him to two and one-half years to five years in prison, to be followed by three years of probation, for his aggravated indecent assault conviction, and a consecutive five years of probation for his corruption of minors conviction. Pasture filed a timely, counseled notice of appeal to the Superior Court.

In the Superior Court, Pasture presented three issues in his appellant's brief: (1) Did the lower court abuse its discretion in revoking probation for the technical violation of marijuana use notwithstanding substantial evidence that probation was proving to be an effective rehabilitative tool?; (2) Was not the evidence insufficient to meet the statutory requirements for imposition of a total confinement sentence after revocation of probation for a technical violation as the conduct of [Pasture] did not indicate that it is likely he will commit another crime if he is not imprisoned and total confinement was not essential to vindicate the authority of the court?; and (3) Was not the probation revocation sentence excessive in light of the underlying technical violation?

The three-judge Superior Court panel found Pasture's first and second issues to be meritless; however, the panel found merit in Pasture's third issue. *See Commonwealth v. Pasture,* 22 A.3d 1051 (Pa.Super. filed Nov. 1, 2010) (table), No. 811 EDA 2009 (unpublished memorandum). Specifically, the Superior Court held Pasture's revocation sentence was excessive. Further, the Superior Court found the revocation court abused its discretion in not stating adequate reasons on the record to evince that it sufficiently considered three factors required by 42 Pa.C.S. § 9721(b),[3] and in failing to order

---

**3.** 42 Pa.C.S. § 9721(b) provides, in relevant part, that, in imposing sentence, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protec-

another PSI. Accordingly, the Superior Court vacated Pasture's February 12, 2009 revocation judgment of sentence and remanded for resentencing. The Superior Court subsequently denied the Commonwealth's application for reargument/reconsideration.

Thereafter, the Commonwealth filed a timely petition for allowance of appeal, alleging that, in vacating Pasture's revocation sentence on the basis it would have weighed the sentencing factors differently than the revocation court, the Superior Court blatantly disregarded this Court's directives in *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007), and this Court should exercise its supervisory powers to address the Superior Court's chronic failure to use the procedural mechanism of reconsideration to correct patent errors. In a *per curiam* order, this Court granted the Commonwealth's petition for allowance of appeal, vacated the Superior Court's November 1, 2010 order, and remanded to that court for consideration of the issue in light of this Court's decision in *Commonwealth v. Perry*, 612 Pa. 557, 32 A.3d 232 (2011) (sentence can be overturned only if it results from manifest unreasonableness, partiality, ill-will, or such lack of support so as to be clearly erroneous).[4] *Commonwealth v. Pasture*, 614 Pa. 333, 37 A.3d 1174 (2012) (*per curiam* order).

Upon remand, the Superior Court panel again vacated Pasture's revocation sentence and remanded for resentencing. *Commonwealth v. Pasture*, 48 A.3d 489 (Pa.Super. April 30, 2012) (table), No. 811 EDA 2009 (unpublished memorandum). In so doing, the panel began with a recitation of our holdings in *Perry*, including our holding that appellate courts must exercise a deferential standard of review with regard to discretionary aspect of sentencing claims since "the sentencing

tion of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

**4.** We note, in *Perry*, this Court held that, under 42 Pa.C.S. § 9781(f), we are precluded from reviewing challenges to the discretionary aspects of a sentence; however, we are not precluded from reviewing the application of legal principles, including whether the lower court has exceeded its standard of review.

court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Id., slip op.* at 9 (quotation and quotation marks omitted).

Purporting to apply *Perry* to the instant case, the Superior Court concluded *Perry* is distinguishable and "[u]nder the present circumstances, discussed *infra,* the court's resentencing following the revocation of [Pasture's] probation was excessive and manifestly unreasonable." *Id., slip op.* at 9–10 (footnote omitted). The panel then turned to Pasture's claims that the revocation court failed to adequately consider the factors set forth in Section 9721(b) and did not state sufficient reasons on the record for the sentence imposed. The Superior Court held:

> After thoroughly reviewing the record in the instant case, we are compelled to agree with [Pasture] that it does not adequately demonstrate that the court adhered to these provisions of the Sentencing Code. The only statements made by the court during [Pasture's] resentencing hearing which could arguably be regarded as an explanation for [Pasture's] sentence were references to the fact that [Pasture] repeatedly used drugs while on probation, that his probation officer gave him a chance to stop using drugs before informing the court, and that [Pasture] "got a tremendous ... break in his initial sentence." *See* N.T. Revocation Hearing, 2/12/09, at 3, 7. These statements are insufficient to convey that the court properly considered the factors in Section 9721(b).
>
> Moreover, while [Pasture] and the Commonwealth informed the court of [Pasture's] recent employment history, *see id.* at 4–5, and prior criminal record, *see id* at 7–8, at no point did the court explain how this information factored into [Pasture's] sentence. The court also failed to consider or discuss how [Pasture's] age, family history, and rehabilitative needs contributed to the sentence it fashioned.

*Pasture,* No. 811 EDA 2009, *slip op.* at 12–13 (footnote omitted).

The Superior Court acknowledged that, in its Pa.R.A.P. 1925(a) opinion, the revocation court provided a further explanation for Pasture's sentence, stating it had "in-depth knowledge" of Pasture, including Pasture's record, continued behavior, and irresponsible actions. Further, the Superior Court acknowledged the revocation court imposed its sentence in consideration of the fact probation, along with drug treatment, proved to be an ineffective rehabilitation tool for Pasture, and the revocation court recognized it needed to protect society, particularly "unsuspecting and innocent children," from Pasture's future antisocial conduct.

Nevertheless, the Superior Court concluded these reasons were not disclosed in open court at the time of sentencing, and in any event, the revocation court's rationale was not supported by the record in several regards. Specifically, the Superior Court concluded the revocation court did not actually have an in-depth knowledge of Pasture since it had been four years since Pasture had last appeared before the court and the revocation court made no inquiry into any changes in Pasture's personal life and situation which may have occurred during that span of time. The Superior Court also rejected the revocation court's statement it was necessary to protect minor children from Pasture's drug induced actions since, although Pasture may have committed his previous crimes while intoxicated, there was no evidence his drug use while he was on probation resulted in Pasture committing any sex offenses.

In sum, the Superior Court held *Perry* was distinguishable from the instant case, and more specifically, the panel held that "unlike in *Perry* where the trial court stated on the record sufficient reasons to demonstrate that it 'properly considered the nature and circumstances of the offense, including the gravity of the offense and impact on the life of the victim; the protection of the public; and the history, characteristics, and rehabilitative needs of Perry, in imposing its sentence[s],' the same cannot be said in the instant case based on the record before us." *Pasture*, No. 811 EDA 2009, *slip op.* at 15 (citation omitted).

Additionally, the Superior Court held *Perry* was distinguishable in that, in the instant case, the revocation court did not order a PSI or state on the record its reasons for declining to do so. The Superior Court acknowledged a court may generally dispense with a PSI if it otherwise has sufficient information allowing it to impose a fully informed sentencing decision. *See Pasture, supra.* However, the panel concluded "[h]ere, the information heard by the court and its questions to [Pasture] during the revocation hearing do 'not approach the level of thoroughness afforded by a properly crafted [PSI].'" *Pasture,* No. 811 EDA 2009, *slip op.* at 18 (citation omitted). The panel acknowledged the revocation court heard evidence regarding Pasture's gunshot wounds, employment as a caretaker for an elderly woman, participation in out-patient drug rehabilitation, attendance at court-mandated sex offender therapy, and prior criminal history with the court. However, the Superior Court concluded the court heard no information regarding Pasture's "education, employment history, family relationships, interests and activities, residence history, or information about resources available to assist [Pasture]. The court also did not indicate that it had received or considered any reports from counselors at [Pasture's] drug rehabilitation or sex offender treatment programs." *Id., slip op.* at 18–19. Thus, the Superior Court panel concluded the failure to order a new PSI provided additional support for finding *Perry* to be distinguishable, and in vacating Pasture's revocation judgment of sentence and remanding for resentencing.

Subsequently, the Commonwealth filed a timely petition for allowance of appeal, and we accepted the following sole issue for review:

> Following remand of this matter for reconsideration by the Superior Court in light of *Commonwealth v. Perry* [612 Pa. 557], 32 A.3d 232 (Pa.2011), did the Superior Court, in purporting to distinguish *Perry*, disregard, for a second time, this Court's directives in *Perry* and *Commonwealth v. Walls* [592 Pa. 557], 926 A.2d 957 (Pa.2007)?

*Commonwealth v. Pasture,* 621 Pa. 311, 77 A.3d 618 (2013) (*per curiam* order).

■■■■ As this issue presents a question of law, our scope of review is plenary and our standard of review is *de novo*. *Perry, supra.*

## II. Discussion

■■■■ In *Perry* and *Walls,* which involved initial sentencing proceedings, this Court reinforced the notion that a trial court has broad discretion in sentencing a defendant, and concomitantly, the appellate courts utilize a deferential standard of appellate review in determining whether the trial court abused its discretion in fashioning an appropriate sentence. *See Perry, supra; Walls, supra.* The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and " 'determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.' " *Perry,* 612 Pa. at 565, 32 A.3d at 236 (quoting *Walls,* 592 Pa. at 565, 926 A.2d at 961 (citations omitted)). "Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." *Walls,* 592 Pa. at 565, 926 A.2d at 961.

The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply,

and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721. *See Commonwealth v. Reaves,* 592 Pa. 134, 150, 923 A.2d 1119, 1129 (2007) (citing 204 Pa.Code. § 303.1(b) (Sentencing Guidelines do not apply to sentences imposed as result of revocation of probation)).

■ Upon revoking probation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b). Thus, upon revoking probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence, although once probation has been revoked, the court shall not impose a sentence of total confinement unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c).

Moreover, 42 Pa.C.S. § 9721(b) specifies that in every case following the revocation of probation, "the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *See also* Pa.R.Crim.P. 708(C)(2) (indicating at the time of sentence following the revocation of probation, "[t]he judge shall state on the record the reasons for the sentence imposed.").[5]

---

5. Effective May 1, 2013, the text of Subsection 708(C)(2) is now found in Subsection 708(D)(2).

However, following revocation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. Simply put, since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing. The rationale for this is obvious. When sentencing is a consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant, particularly where, as here, the trial judge had the benefit of a PSI during the initial sentencing proceedings. *See Walls*, 592 Pa. at 574 n. 7, 926 A.2d at 967 n. 7 ("Where [PSI] exist[s], we shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Contrary to the Superior Court's suggestion in the instant case, there is no absolute requirement that a trial judge, who has already given the defendant one sentencing break after having the benefit of a full record, including a PSI, must order another PSI before fashioning the appropriate revocation sentence.[6]

In any event, in this case, after entering his plea, Pasture initially received a lenient sentence for aggravated indecent assault and corruption of minors. In fact, Pasture originally received a mitigated-range sentence,[7] and the bulk of his sentence was probationary in nature. Despite this, he failed to adhere to the conditions imposed upon him, and the trial court, upon revocation of the probation, imposed a lengthier sentence, which was within the statutory bounds. We emphasize a trial court does not necessarily abuse its discretion in imposing a seemingly harsher post-revocation sentence where the defendant received a lenient sentence and then

6. It is noteworthy that Pasture did not object to the revocation court's reliance upon the initial PSI in lieu of ordering another PSI.

7. During the initial sentencing hearing, as to aggravated indecent assault, the only crime for which Pasture received a term of imprisonment, the trial court judge noted "[t]he guideline range is 22 to 36 months, plus or minus 12." N.T. 7/21/2004, sentencing hearing, at 5.

failed to adhere to the conditions imposed on him. *See Reaves*, 592 Pa. at 138 n. 5, 923 A.2d at 1122 n. 5. In point of fact, where the revocation sentence was adequately considered and sufficiently explained on the record by the revocation judge, in light of the judge's experience with the defendant and awareness of the circumstances of the probation violation, under the appropriate deferential standard of review, the sentence, if within the statutory bounds, is peculiarly within the judge's discretion.

In the instant case, the record confirms that the revocation court judge, who had previously presided over Pasture's plea, Megan's Law II, and original sentencing hearings, was in possession of a PSI from the initial sentencing proceedings and heard evidence at the revocation hearing regarding Pasture's conduct while he was on probation. Thus, the revocation court was provided with sufficient information to make a fully informed sentence following the revocation of Pasture's probation. Additionally, the revocation court explained the court's attempts to address Pasture's rehabilitative needs through probation in conjunction with drug treatment had failed, and despite the fact Pasture's probation officer had afforded him numerous opportunities to conform to the terms of his probation, Pasture continued to use prohibited substances similar to the ones he had used when he committed his prior sex offenses against children.

Based upon the above, we find the Superior Court misapplied certain sentencing provisions, leading it to give insufficient deference to the revocation court's imposition of the sentence following the revocation of Pasture's probation and improperly vacate the judgment of sentence imposed upon Pasture by the revocation court. Therefore, we vacate the Superior Court's order and reinstate Pasture's judgment of sentence entered on February 12, 2009. Jurisdiction relinquished.

Former Justice McCAFFERY did not participate in the decision of this case.

Chief Justice CASTILLE and Justices EAKIN and BAER join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice TODD dissents as she would dismiss this appeal as having been improvidently granted.

Justice SAYLOR, dissenting.

I respectfully dissent for the reasons set forth in my prior Dissenting Statement in this case, *see Commonwealth v. Pasture*, 614 Pa. 333, 333, 37 A.3d 1174, 1174–75 (2012) (Saylor, J., dissenting), as well as my dissenting opinion in *Commonwealth v. Perry*, 612 Pa. 557, 575, 32 A.3d 232, 242–43 (2011) (Saylor, J., dissenting).