J. A25036/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GERALD STOKES, | : | |
| | : | |
| Appellant | : | No. 349 EDA 2014 |

Appeal from the Judgment of Sentence January 31, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0405691-2001

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GERALD STOKES, | : | |
| | : | |
| Appellant | : | No. 350 EDA 2014 |

Appeal from the Judgment of Sentence January 31, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0008894-2011

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:           **FILED SEPTEMBER 23, 2015**

Appellant, Gerald Stokes, appeals from judgment of sentence entered in the Philadelphia Court of Common Pleas following the third revocation of his probation. Appellant argues the sentence of ten to twenty years'

---

[*] Former Justice specially assigned to the Superior Court.

imprisonment for his rape[1] conviction is excessive because he has only incurred technical violations of probation—aside from a failure to report under Megan's Law[2]—and he is at a relatively advanced age and suffers health issues.[3]  We affirm.

The trial court summarized Appellant has appeared before it "many times in this matter over the past decade."  Trial Ct. Op., 1/12/15, at 1.  On February 13, 2003, Appellant pleaded guilty to rape of a four-year old victim.[4]  On May 23rd, the trial court imposed a sentence of eleven-and-a-half to twenty-three months' imprisonment and a consecutive seven years' probation.

In January of 2005, Appellant's probation was revoked for the first time, for a technical violation.[5]  The court imposed a new sentence of eleven

---

[1] 18 Pa.C.S. § 3121.  The record does not indicate under which subsection of the rape statute Appellant was convicted.

[2] As the trial court noted, Megan's Law, 42 Pa.C.S. §§ 9791-9799, expired on December 20, 2012, and was replaced by the Sexual Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10-9799.41.

[3] This sentence for the rape conviction is docketed at CP-51-CR-0405691-2001.  On the same day, the trial court imposed sentence in Appellant's case at docket CP-51-CR-0008894-2011, for failure to comply with Megan's Law reporting requirements.  On appeal, Appellant challenges only the rape sentence.

[4] Prior to Appellant's plea, in October of 2002, a jury trial resulted in a hung jury.

[5] Neither the trial court opinion nor certified record indicates the nature of the technical violation.

and a half to twenty-three months, to be followed by seven years' probation.

"In 2009 allegations arose that Appellant failed to comply with important requirements of his sex offender probation . . . . Appellant could not be located and a probation bench warrant was issued on July 15, 2009." Trial Ct. Op. at 2. Two years later, "[i]n July 2011, Appellant was arrested. New charges were lodged pursuant to 18 Pa.C.S.A. § 4915[ ] based upon his failure to comply with Megan's Law." *Id.* On December 21, 2011, Appellant pleaded guilty to the Megan's Law violation and the court imposed six years' probation. On the same day, the trial court also revoked Appellant's probation in his rape sentence, and imposed a new sentence of time served to twenty-three-months' imprisonment, to be followed by seven years' probation. The two probationary terms were to run consecutively.

Additionally, we note that at this hearing, Appellant responded specifically to questioning as follows: (1) he lived at "1201 Friendship Street, apartment-2;" (2) he intended to return to that apartment; (3) there were no minors in that building;[6] and (4) his "brother has been trying to keep that

---

[6] Appellant testified as follows:

> [Probation officer:] Are there any minors in the building?
>
> [Appellant:] No.
>
> [Probation officer:] No minors at all?
>
> [Appellant:] No.

apartment for" him. N.T., 12/21/11, at 37. Appellant's brother, Eugene Stokes, testified the apartment was available to Appellant until December 31, 2011, and "[a]fter that [he had] to start to move everything out." *Id.* at 39. In response to the court's question of how many apartments were in the building, Eugene stated "it's a duplex." *Id.* The court also asked if he knew if minor children lived in the property, and Eugene responded, "[N]ot to my knowledge." *Id.*

Forty-one days later, on January 31, 2012 Appellant appeared before the court for the instant violation of probation hearing. The probation officer averred that on the evening of or the morning after the December 21st hearing, it received a complaint, from another tenant in Appellant's apartment building, about Appellant living in the building. *Id.* at 4-5. The probation officer investigated, and learned the building had six apartments and "three of the units [were] occupied with families with minor children." *Id.* at 5. The probation officer also learned of a letter, dated December 7th and addressed to both Appellant and his brother, evicting Appellant from the apartment effective December 31st.[7] Finally, we note the probation officer

---

N.T., 12/21/11, at 37.

[7] The sole witness at this hearing was Appellant's brother, Eugene. Eugene: (1) denied receiving the eviction letter but stated he talked with the landlord on the telephone; (2) stated the eviction was based on nonpayment of rent but he, Eugene paid it and therefore "that should have been alleviated;" (3) he "wasn't really familiar" with how many apartment units there were, but

stated Appellant "is considered a high risk to reoffend sexually." *Id.* at 14.

Appellant's sole statement to the court was as follows:

> First of all, I don't know—you know, I did what you told me to do.  Well, the rest—I ain't know—I ain't know no address but that address on Friendship Street.  Right.  So you know—but I didn't do anything wrong.  I apologize, you know.  So you know, I'm—it's the only thing I can say.

*Id.* at 20-21.

The trial court found Appellant in violation of his probation, revoked his probation for the third time in this matter, and imposed the instant sentence of ten to twenty years' imprisonment.  The court also imposed a consecutive six years' probation for the failure to report under Megan's Law violation.

On February 10, 2012, Appellant filed a timely motion to reconsider sentence, which was denied.  Appellant filed a direct appeal, but it was discontinued on July 19th.  Appellant then filed a timely, counseled Post Conviction Relief Act[8] petition on February 21, 2013, seeking reinstatement of his direct appeal rights *nunc pro tunc*.  The trial court granted relief on January 16, 2014, and this appeal followed.

On appeal, Appellant argues the trial court abused its discretion in

---

conceded the landlord told him there were "six or eight;" and (4) when asked about his statement at the last hearing that there were no minors in the building, responded "Not to my knowledge."  N.T., 1/31/12, at 26. Eugene further stated Appellant could now live with him at his house.  *Id.* at 23.  The trial court specifically found Eugene, as well as Appellant, "very clearly lied to this Court under oath."  *Id.* at 28.

[8] 42 Pa.C.S. §§ 9541-9546.

imposing the maximum sentence of ten to twenty years' imprisonment. Appellant concedes he violated his probation and that "the court was called upon . . . to impose a substantial sentence of incarceration." Appellant's Brief at 13-14. In support, Appellant avers his violations of probation were only "'technical' in nature" and the only direct violation was the failure to register his residence under Megan's Law. *Id.* at 14. Appellant also cites his "(relatively) advanced age for an offender (61 [years]), debilitated physical condition—confinement to a wheel chair, HIV positive, diabetic and failing kidneys [sic]" in arguing "the court's primary goal—protection of the public—could have been accomplished with a significantly lesser sentence." *Id.* He proposes "a state sentence of 5 or 6 or 7 to 20 years . . . followed by very strict supervision on state parole for approximately 10 to 12 years." *Id.* at 16. We hold Appellant is due no relief.

Preliminarily, we note Appellant preserved this issue in his post-sentence motion, includes a Pa.R.A.P. 2119(f) statement in his appellate brief, and raises a substantial question for our review. *See Commonwealth v. Tobin*, 89 A.3d 663, 666 (Pa. Super. 2014) (stating defendant must raise discretionary aspect of sentencing issue either during sentencing proceedings or in post-sentence motion); *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010) (stating, "The imposition of a sentence of total confinement after the revocation of probation for a technical violation, and not a new criminal offense, implicates the

'fundamental norms which underlie the sentencing process,'" and finding substantial question raised). Accordingly, we find Appellant has preserved his discretionary aspect of sentencing issue for our review. *See Tobin*, 89 A.3d at 666; *Crump*, 995 A.2d at 1282.

We consider the relevant standard of review:

> [A] trial court has broad discretion in sentencing a defendant, and concomitantly, the appellate courts utilize a deferential standard of appellate review in determining whether the trial court abused its discretion . . . .
>
> . . . At initial sentencing, all of the rules and procedures [for a court's] discretionary sentencing authority [apply]. However, it is a different matter when a defendant reappears . . . following a violation . . . of a probationary sentence. For example, . . . contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721.
>
> . . . [U]pon revoking probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the [initial] sentence, although . . . the court shall not impose a sentence of total confinement unless it finds that:
>
>> (1) the defendant has been convicted of another crime; or
>>
>> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>>
>> (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c).

***Commonwealth v. Pasture***, 107 A.3d 21, 27-28 (Pa. 2014) (some citations omitted). This Court has stated, "A trial court does not necessarily abuse its discretion in imposing a seemingly harsh post-revocation sentence where the defendant originally received a lenient sentence and then failed to adhere the conditions imposed on him." ***Commonwealth v. Schutzues***, 54 A.3d 86, 99 (Pa. Super. 2012), *appeal denied*, 67 A.3d 796 (Pa. 2013).

At sentencing in the case *sub judice*, the trial court stated:

> First of all, both [Appellant and his brother] had very clearly lied to this Court under oath. Their testimony is totally and completely incredible. This Court asked very specific questions on the record. I was told very specifically by [Appellant] that there were only . . . two units present and that there were no children, that he had the ability to return, and that all of these things under oath were true and correct.

> \* \* \*

> [Additionally,] the registration of [Appellant] and his compliance did not come until after sentencing [for the prior probation violation.]

> I find [Appellant] has consistently violated the conditions of his [probation]. He did not, in fact, report [or] go to the programs he was required to do. He has continued to deny his status as a sexual offender, and the Court notes that there is a high probability that [Appellant] will commit an offense while on probation and parole.

> And it is unbelievably clear to this Court that [Appellant] has manipulated the system because of his condition and his appearance in this court and that he has basically gone under the radar. . . . [T]he court is now convinced, having heard the testimony . . . that there has

> been a continuing course of conduct which puts the children in the community of Philadelphia at risk[.]
>
> There is no effective vehicle for rehabilitation for [Appellant]. He has indicated in every sense of the way that he has complete disregard for this Court[ and the court's orders and he believes] he can set his own rules, and he seems to think that it is okay to lie to a Court under oath.

N.T., 1/31/12, at 28-32. The court further recommended, at the Commonwealth's suggestion, that Appellant be placed at the Laurel Springs prison facility "which is specifically designed to take care of elderly inmates that may or may not have various health problems." *See id.* at 15, 32. In addition, the court's opinion noted that in his allocution, Appellant denied any wrongdoing. Trial Ct. Op. at 5.

We hold the court did not abuse its discretion. It properly considered, under 42 Pa.C.S. § 9771(c), Appellant's conduct which "indicate[d] it is likely that he will commit another crime if he is not imprisoned" and that the sentence was "essential to vindicate the authority of the court." *See* 42 Pa.C.S. § 9771(c)(2)-(3). We reject Appellant's premise that the court's "primary goal" in sentencing was to protect the public. *See* Appellant's Brief at 14. Instead, in imposing a sentence following revocation of probation, a trial court is not required to consider the protection of the public. *See Pasture*, 107 A.3d at 27.

Furthermore, we note that although Appellant stated at the December 21, 2011 hearing that he had diabetes, high blood pressure, and HIV, N.T.,

12/21/11, at 4, he made no mention of his health issues at the instant violation and sentencing hearing on January 31, 2012. The Commonwealth did assert:

> I am not a hundred percent certain of the nature of [Appellant's] health problems. I see he's in a wheel chair today. It's my understanding he isn't confined to a wheelchair. . . . [T]he state prison system has a facility called Laurel Springs which is specifically designed to take care of elderly inmates that may or may not have various health problems. . . . [T]he State would certainly do the proper evaluation[ and] put him in a facilitaty that can provide whatever medical needs he has . . . .

N.T., 1/31/12, at 15-16. However, Appellant did not respond to these statements. Nevertheless, as stated above, the court recommended that Appellant be housed at "Laurel Springs so they can accommodate [him] while in custody." *Id.* at 32.

Appellant's initial sentence for his rape conviction, as well as his first two probation violation sentences, were each eleven-and-a-half to twenty-three months' imprisonment and a consecutive seven years' probation.[9] Although the instant sentence is substantially longer, at ten to twenty years' imprisonment and six years' probation, we find no abuse of discretion. *See Pasture*, 107 A.3d at 27-28; *Schutzues*, 54 A.3d at 99.

Judgment of sentence affirmed.

---

[9] We note the sentence for the second probation violation was "time served" to twenty-three months.

J.A25036/15

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2015