J-S24043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:   PENNSYLVANIA
:
v.                       :
:
:
:
FREDDIE HOOKS,           :
:
       Appellant          :       No. 1738 MDA 2017

Appeal from the Judgment of Sentence April 25, 2017
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0001042-2007

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED JULY 24, 2018**

Freddie Hooks ("Hooks") appeals from the judgment of sentence imposed following the revocation of his probation.  We affirm in part and vacate in part, and remand for further proceedings.

This Court previously set forth the relevant underlying facts as follows:

On November 2, 2007, [Hooks] entered negotiated guilty pleas to [rape, aggravated indecent assault, and corruption of minors] for his repeated sexual assault, over a two year period [(starting in November 2001)], of the victim, who was 8 years old when the assaults began.[fn1]  [As part of his guilty plea, Hooks also signed "Special Conditions of Probation/Parole for Sexual Offenders," which, *inter alia*, directed Hooks to undergo sex offender treatment as ordered by the Lancaster County Adult Probation/Parole Services.]  Due to the nature of the charges, the trial court ordered [Hooks] to undergo an assessment by the Sexual Offender Assessment Board to determine whether he should be classified as a sexually violent predator under Megan's Law.  **See**[] 42 Pa.C.S.[A.] § 9795.4.  When the assessment was completed, the trial court held a Megan's Law hearing, during which both the Commonwealth and the defense presented expert testimony.  By Order dated February 29, 2008, the trial court determined that [Hooks] met the definition of a sexually violent

predator. On March 14, 2008, [Hooks] was sentenced, pursuant to a negotiated plea, to a term of imprisonment of [] five years to ten years[, and a consecutive probation term of three years,] for the charge of rape, and a concurrent term of five years to ten years for the charge of aggravated indecent assault. No further penalty was assessed on the charge of corruption of minors. [Hooks was also subject to a lifetime reporting requirement under Pennsylvania's Megan's Law III.[1]]

_____

[fn1] [Hooks] was babysitting the victim when the attacks occurred. In several instances, he blindfolded the victim and inserted objects into her vagina. Moreover, the victim had been diagnosed with Asperger's syndrome, a disorder on the autism spectrum, in which "individuals have difficulty in understanding social cues from others." N.T., February 26, 2008, p. 8.

**Commonwealth v. Hooks**, 976 A.2d 1207 (Pa. Super. 2009) (unpublished

memorandum at 1-2) (footnote in original, footnote omitted, footnote added).

_____

[1] On December 16, 2013, the Supreme Court of Pennsylvania ruled that Megan's Law III was unconstitutional because Act 2004-152 (Act 152), including the provisions of Megan's Law III, amounted to omnibus legislation, which violated the Single Subject Rule of Article III, Section 3, of the Pennsylvania Constitution. **See Commonwealth v. Neiman**, 84 A.3d 603, 615 (Pa. 2013). The Supreme Court directed that its decision be stayed for 90 days to provide the Legislature the opportunity "to consider appropriate remedial measures, or to allow for a smooth transition period." **Id.** at 616. The Sexual Offender Registration and Notification Act ("SORNA") went into effect on December 20, 2012, and "provided for the expiration of Megan's Law III at that time." **Commonwealth v. Derhammer**, 173 A.3d 723, 725 (Pa. 2017). Subsequently, the Supreme Court of Pennsylvania held that the registration provisions under SORNA were unconstitutional. **See Commonwealth v. Muniz**, 164 A.3d 1189, 1218 (Pa. 2017). Further, this Court held that section 9799.24(e)(3) of SORNA, the mechanism used to designate a convicted defendant a "sexually violent predator," violated the United States and Pennsylvania Constitutions. **See Commonwealth v. Butler**, 173 A.3d 1212, 1218 (Pa. Super. 2017).

This Court affirmed the judgment of sentence, and the Supreme Court of Pennsylvania denied allowance of appeal on June 1, 2010. *See id.*, *appeal denied*, 996 A.2d 491 (Pa. 2010).

On November 28, 2016, a capias was issued at the request of the Lancaster County Office of Adult Probation and Parole Services based upon Hooks's refusal to enroll in and complete sex offender treatment as required by the "Special Conditions of Probation/Parole for Sexual Offenders."[2] On February 24, 2017, a probation violation hearing was held, after which Hooks was found in violation of his probation. On April 25, 2017, Hooks was sentenced to five to ten years in prison. Hooks filed a Motion to Modify Sentence, which the trial court denied. Hooks did not initially file a direct appeal.

On October 5, 2017, Hooks filed a Petition pursuant to the Post Conviction Relief Act ("PCRA"),[3] arguing that his counsel was ineffective for failing to file a direct appeal following the imposition of the probation revocation sentence. The PCRA court granted Hooks's Petition. Thereafter, Hooks filed a Notice of Appeal of the violation of his probation revocation sentence. The trial court ordered Hooks to file a Pa.R.A.P. 1925(b) concise statement, and Hooks timely complied.

---

[2] Hooks served his entire ten-year prison sentence.

[3] *See* 42 Pa.C.S.A. §§ 9541-9546.

On appeal, Hooks raises the question for our review:

Was a sentence of five to ten years['] incarceration for a probation violation so manifestly excessive as to constitute too severe a punishment and clearly unreasonable under the circumstances of this case, as it was not consistent with the protection of the public, the gravity of the offenses, and the rehabilitative needs of [Hooks], and the court did not impose an individualized sentence which took into consideration [Hooks's] circumstances?

Brief for Appellant at 4.

Hooks challenges the discretionary aspects of his sentence following the revocation of his probation.[4] "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

* * *

---

[4] We note that Hooks was explicitly charged with violating the terms of the "Special Conditions of Probation/Parole for Sexual Offenders," not a violation of Megan's Law III. **Cf. Derhammer**, 173 A.3d at 728-31 (holding that Commonwealth lacked authority to prosecute defendant for failing to register as a sex offender within 48 hours of changing his address, because the statute setting forth offense under Megan's Law III had been ruled unconstitutional, and the statute in SORNA had not been enacted at the time of the alleged offense).

- 4 -

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Moury*, 992 A.2d at 170 (quotation marks and some citations omitted).

In the instant case, Hooks filed a timely Notice of Appeal, preserved his claim in a timely Motion to Reconsider, and included in his appellate brief a separate Rule 2119(f) Statement. Hooks's contention that his prison sentence was excessive in light of a technical probation violation raises a substantial question. *See Commonwealth v. Colon*, 102 A.3d 1033, 1043 (Pa. Super. 2014) (stating that a claim challenging a sentence of total confinement, based solely on a technical probation violation, raises a substantial question). Thus, we will consider the merits of Hooks's claims.

Our standard of review is well-settled:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id.* (citation omitted).

The reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript

used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant appears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721.

***Commonwealth v. Pasture***, 107 A.3d 21, 27 (Pa. 2014) (some citations and quotation marks omitted).

Upon revocation of probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentence, including incarceration. 42 Pa.C.S.A. § 9771(b). However, the imposition of total confinement upon revocation requires a finding that either "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." ***Id.*** § 9771(c).

Moreover, "[i]n every case in which the court … resentences an offender following revocation of probation, … the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.* § 9721(b); *see also* Pa.R.Crim.P. 708(D)(2) (providing that "[t]he judge shall state on the record the reasons for the sentence imposed."). However, following revocation of probation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. *See Pasture*, 107 A.3d at 28 (stating that "since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing.").

Hooks contends that his probation revocation sentence was manifestly excessive. Brief for Appellant at 10, 12. Hooks argues that while in prison, he completed over 800 hours of educational and vocational courses. *Id.* at 12; *see also id.* (noting that Hooks had developed a plan to succeed after his release from prison, and that he had been accepted into the New Person Center). Hooks asserts that the trial court failed to consider his positive strides and only focused on his failure to complete sex offender treatment. *Id.* Hooks claims his sentence should be reversed, and the case remanded for resentencing. *Id.* at 13.

The trial court addressed Hooks's claims as follows:

> In crafting the sentence[,] the [trial c]ourt considered the [p]robation violation summary, the [p]re-sentence [i]nvestigation, statements made by [Hooks] and counsel, the rehabilitative needs of [Hooks], and the risk [Hooks] posed to the community. Despite [Hooks's] exemplary prison record, the [trial c]ourt noted that it was particularly concerned that [Hooks] failed to complete sexual offender counseling. Per the [p]robation [v]iolation [s]ummary, [Hooks] failed, after given several opportunities, to fully accept responsibility for his offenses, as well as complete the required homework for his sexual offender treatment program. Therefore, [Hooks] was discharged from the program on September 21, 2011. Given the severity of [Hooks's] crime, and the danger that sexual offenders pose to the rest of the community, [Hooks's] failure to complete the required programming is concerning. The [trial c]ourt noted that this failure to complete the treatment program was a "huge concern," and although [Hooks] completed other programs while incarcerated, "it seems he was missing the most important one of all, which is the sexual offender type of counseling." [N.T., 4/25/17, at 7.] Furthermore, [Hooks] had ten years to complete the required counseling, and failed to do so. In light of these concerns, releasing [Hooks] would have posed a significant risk to the community, and the [trial c]ourt did not abuse its discretion in imposing an appropriate sentence.

Trial Court Opinion, 1/2/18, at 3-4 (unnumbered, footnotes omitted); **see also Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988) (stating that "[w]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself."); **id.** (noting that "[h]aving been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.").

Based upon the foregoing, we conclude that the record confirms that the trial court had sufficient information to make a fully informed sentencing

decision following the revocation of Hooks's probation. Additionally, we conclude that Hooks's prison sentence is not manifestly excessive. Discerning no abuse of discretion by the trial court, we will not disrupt Hooks's sentence on appeal. *See Devers, supra*.

Furthermore, although Hooks does not challenge his sexually violent predator status, we *sua sponte* address the impact of *Nieman* on the legality of Hooks's sexually violent predator designation. *See Butler*, 173 A.3d at 1214 (addressing the legality of appellant's sexually violent predator status *sua sponte*). Here, at the time of Hooks's plea and sentence, Megan's Law III controlled sexually violent predator assessments. In light of our Supreme Court's disposition in *Neiman* striking the entirety of Megan's Law III as violative of the Pennsylvania Constitution, we are constrained to vacate Hooks's sexually violent predator determination under Megan's Law III. *See Neiman, supra*.

Based upon the foregoing, we vacate the portion of Hook's sentence with regard to the finding that Hooks is a sexually violent predator. We remand to the trial court for the sole purpose of determining Hooks's

registration requirements.[5]   We affirm Hooks's judgment of sentence in all other respects.

Judgment of sentence affirmed in part and vacated in part.   Case remanded with instructions.   Jurisdiction relinquished.

Judge Kunselman joins the memorandum.

Judge Olson concurs in the result.

_____

[5] The Legislature recently amended SORNA, adding, *inter alia*, section 9799.55, which states the following, in relevant part:

**(b) Lifetime registration.--**The following individuals shall be subject to lifetime registration:

\*\*\*

(2) Individuals convicted:

(i)(A) in this Commonwealth of the following offenses, if committed on or after April 22, 1996, but before December 20, 2012:

18 Pa.C.S.[A.] § 3121 (relating to rape);
…

18 Pa.C.S.[A.] § 3125 (relating to aggravated indecent assault);
…

42 Pa.C.S.A. § 9799.55.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>07/24/2018</u>