**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3011
_____

FRANK E. ANDREW,
                          Appellant

v.

TODD BUSKIRK; FRANK LONGENBACH; ROBIN STANLEY

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-16-cv-03851)
District Judge: Honorable Lawrence F. Stengel

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 10, 2018

_____

Before: GREENAWAY, JR., RESTREPO and BIBAS, *Circuit Judges*.

(Opinion Filed: May 29, 2019)
_____

OPINION*
_____

RESTREPO, *Circuit Judge*.

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Appellant Frank Andrew claims that several Pennsylvania prison officials violated his constitutional rights by detaining him past the expiration of his maximum term of imprisonment. The District Court found that no such over-detention occurred and that the officials were entitled to summary judgment on Andrew's claims. While the question of Andrew's over-detention has no clear answer under Pennsylvania law, we find that the defendants are nonetheless entitled to qualified immunity with respect to Andrew's claims. We will affirm.

## I

Because we write principally for the parties, we set out the facts only as needed for the discussion below. From 2010 to 2014, Andrew served several jail sentences in three Pennsylvania counties for separate state offenses and parole violations. *See Andrew v. Buskirk*, No. 16-3851, 2017 WL 3485872, at *1–2 (E.D. Pa. Aug. 14, 2017).

In September 2010, Andrew was sentenced to a term of 11 ½ to 23 months in Bucks County Jail. Five months later, he was sentenced to a term of 11 ½ to 23 months in Northampton County Jail on separate charges with an order that this sentence run concurrently with the Bucks County sentence. After completing the minimum of his sentence in Northampton County, Andrew was paroled and sent to Bucks County to

complete the minimum of his sentence there. He was paroled one month later, in September 2011.[1]

On June 5, 2012, Andrew was arrested and detained in Bucks County Jail on new charges. He pled guilty and was sentenced to twelve months of probation. *See* Notice of Removal, Dist. Ct. ECF No. 1, at 12. Because Andrew still had pending parole violation hearings in Bucks and Northampton Counties, he remained detained in Bucks County Jail even after receiving a sentence of probation.[2] Andrew was released in March 2013 after serving separate parole violation sentences in each county.[3]

In December 2013, Andrew again violated parole in Bucks and Northampton Counties. At his Bucks County parole violation hearing, the judge ordered that sentencing

---

[1] Andrew was also sentenced to an undisclosed term of imprisonment in Montgomery County Jail around the same time that he was sentenced in Bucks and Northampton Counties. His Montgomery County sentence also ran concurrent to the other two sentences and would later become the grounds for his recommitment on a parole violation. However, Andrew's time served in Montgomery County has no bearing on the claims before us, so we will not belabor the details.

[2] Because Andrew was sentenced to a maximum term of less than two years in each of Bucks and Northampton Counties, his parole violation sentencings fell under the jurisdiction of the respective county courts rather than the Pennsylvania Board of Probation and Parole. *See* 61 Pa. Cons. Stat. § 6132(a)(2)(ii); 42 Pa. Cons. Stat. § 9762(b)(3).

[3] At his Bucks County parole violation hearing, Andrew was sentenced to serve the balance of his backtime with credit for time served from June 5, 2012, to January 23, 2013, in addition to two years of probation. *See* Defs.' Statement Supp. Summ. J., Dist. Ct. ECF No. 28-1, at 82. He received credit for time served from June 5, 2012, to January 23, 2013. In Montgomery County, Andrew was sentenced to serve the remainder of his sentence, with credit for time served from June 5, 2012, to January 18, 2013. In Northampton County, Andrew was given work release and was to be re-parole after thirty days. He received credit for time served from February 12, 2013 to March 14, 2013.

be deferred for ninety days.[4] One week later, at Andrew's Northampton County parole violation hearing, the judge revoked his parole and sentenced him to the remainder of the maximum term of his Northampton sentence. On the sentencing sheet, the judge wrote "Violator. Serve balance. Eligible for immediate work release. Remanded to NCP. Concurrent to all other sentences –incl– Bucks Cty." App. 32. During this period of incarceration, Andrew unsuccessfully filed multiple grievances, arguing that he was entitled to credit on his Northampton sentence for the time he spent detained in Bucks County in 2012. After exhausting the grievance process, he retained an attorney who procured a new order from the Northampton County sentencing judge awarding Andrew credit for time served in Bucks County. Andrew was immediately released from Northampton County Jail upon its receipt of the order.

After his release, Andrew filed suit against three Northampton County Department of Corrections officials, asserting that his Northampton sentence was carried out beyond his 23-month maximum period of incarceration due to the officials' failure to credit his sentence with the time he was detained in Bucks County in 2012.[5] He alleged two claims: a violation of his Eighth Amendment right to be free of cruel and unusual punishment

---

[4] The record before us is silent as to any subsequent sentences in Bucks County, but a subsequent sentence would not affect our analysis here as Andrew remained incarcerated in Northampton County Jail until his re-entry to society.
[5] Defendant Todd Buskirk was the Warden of Northampton County Jail for the duration of Andrew's incarceration. Defendants Frank Longenbach and Robin Stanley were both Lieutenants in the jail's Intake Department for the same period.

and a violation of his right not to be falsely imprisoned.[6] The parties exchanged discovery and subsequently filed cross-motions for summary judgment. The District Court granted summary judgment in favor of the Northampton County officials. Andrew appealed.

## II

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction over the District Court's grant of summary judgment to the defendants under 28 U.S.C. § 1291.[7]

## III

We review de novo a court's decision to grant summary judgment. *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011). We view the facts and draw all reasonable inferences "in the light most favorable to the nonmoving party," *id.* (quoting *Armbruster v. Unisys Corp*, 32 F.3d 769, 777 (3d Cir. 1994)), and affirm when there is no genuine issue of material fact, Fed. R. Civ. P. 56(a). Here, the material facts are uncontested, and there remains only an issue of law: whether the prison officials were required to credit Andrew's June 2012 detention in Bucks County toward his Northampton County sentence. Andrew argues that because his original Northampton sentence was ordered to run concurrently with his original Bucks sentence, his time

---

[6] Although Andrew does not explicitly allege a violation of 42 U.S.C. § 1983 in any of his filings, his counsel confirmed to the defendants via telephone that his claims are being asserted under § 1983. *See* Notice of Removal, Dist. Ct. ECF No. 1 at 4.

[7] To the extent that Andrew may appeal the District Court's denial of his Motion for Partial Summary Judgment, we do not have jurisdiction. The denial is neither a final decision nor an exception under the collateral order doctrine. *See In re Montgomery County*, 215 F.3d 367, 373-74 (3d. Cir. 2000), *cert. denied*, 531 U.S. 1126 (2001).

served in Northampton County for a parole violation should be credited with his time detained in Bucks County for a parole violation as well. He further argues that the defendants' refusal to credit his Northampton sentence in this manner renders them liable under 42 U.S.C. § 1983 for violating his constitutional rights. We disagree on both points. It is not clear that Andrew's Northampton sentence should have been credited in the way he suggests, and to the extent that it is not clear, the defendants are entitled to qualified immunity on his claims.[8]

### A

It is not immediately apparent from the facts of this case that the Northampton County Jail officials detained Andrew beyond his maximum period of incarceration. Andrew's sentences are governed by Pennsylvania law, which requires the award of credit for time served under four enumerated scenarios. *See* 42 Pa. Cons. Stat. § 9760. Andrew's theory—that his incarceration in two counties on revocation of parole for previously concurrent sentences should still be considered concurrent—does not fall into any of these scenarios. Pennsylvania common law is also silent as to his theory. We have not identified, and Andrew has not directed us to, any case law that requires, or even gives discretion to, prison officials to apply credit in one sentence to a separate sentence that was previously being served concurrently. Rather, we have found the opposite.

---

[8] Although the District Court did not reach the issue of qualified immunity in its opinion, we may affirm its decision "on any grounds supported by the record." *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc) (citation omitted).

Under Pennsylvania law, when a person is incarcerated on violation of parole, it is at least arguable that time served on one such sentence does not have to be counted towards time served for a previously concurrent sentence. *Merritt v. Pa. Bd. of Prob. & Parole*, 539 A.2d 511, 512 (Pa. Commw. Ct. 1988), *aff'd* 574 A.2d 597 (Pa. 1990) (citations omitted). A sentence for violation of parole "is limited only by the maximum sentence" that could have been imposed under the original sentence. *Commonwealth v. Presley*, 193 A.3d 436, 445 (Pa. Super. Ct. 2018) (citing *Commonwealth v. Pasture*, 630 107 A.3d 21, 27–28 (Pa. 2014)); *see also* Pa. R. Crim. P. 708 (governing sentences for parole violations). Thus, Andrew's original sentencing order controlled his future parole violation sentence only to the extent that it limited his maximum term to 23 months. It did not, and could not, mandate that a future sentencing court must order a parole violation sentence to run concurrently with future parole violation sentences in other counties. And contrary to Andrew's argument, the defendants had no "duty or authority" to infer any such mandate or "correct Mr. Andrew's sentence calculation themselves." Appellant's Reply Br. 6.

Andrew argues in the alternative that the 2014 instruction for his parole revocation to run "[c]oncurrent to all other sentences –incl– Bucks Cty," App. 32, should be read as granting credit for his earlier detention in Bucks County. This reading is not supported by any case law or the plain language of the instruction. A sentencing instruction of "concurrent" is not an instruction for credit. Sentencing judges intending to award credit ordinarily will state so, as we saw in multiple sentencing orders in this case. *See*

7

discussion, *supra* note 3. Regardless, we need not become too transfixed on this point, as all of the defendants are entitled to qualified immunity with regard to Andrew's claims.

**B**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is available "regardless of whether the government official's conduct results from a mistake of law, mistake of fact, or mistake based on mixed questions of law and fact." *Montanez v. Thompson*, 603 F.3d 243, 250 (3d Cir. 2010). We analyze a qualified immunity claim using a two-prong inquiry,[9] and we may exercise our discretion in deciding which prong to address first. *Pearson*, 555 U.S. at 236. As a general matter, we have found that claims alleging over-detention under state law are best resolved under the "clearly established" prong, rather than the "alleged violation" prong. *See Egolf v. Witmer*, 526 F.3d 104, 110 (3d Cir. 2008) ("[F]ederal courts do a disservice to state actors who would be induced to rely on a ruling [regarding an alleged state violation] that might change altogether upon subsequent review by the state court."). Accordingly, we turn to that analysis first.

A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194,

---

[9] Under the first prong, we must decide "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232. Under the second prong, we must decide "whether the right at issue was 'clearly established' at the time of a defendant's alleged misconduct." *Id*.

202 (2001) (citation omitted). Because we assess an alleged right in the specific context of the case, we look to the objective legal reasonableness of the officer's actions "in light of the legal rules that were clearly established at the time [the action] was taken." *Montanez*, 603 F.3d at 251 (quoting *Pearson*, 555 U.S. at 244). In the context of an Eighth Amendment claim for incarceration without penological justification, which we face here, a plaintiff must demonstrate three elements to establish a prison official's violation of a clearly established right: (1) that the official had knowledge that the prisoner was or would be subject to "unwarranted punishment"; (2) that the official either failed to act or took ineffectual action such that his response amounted to deliberate indifference to the problem; and (3) that there was a causal connection between the officer's response to the problem (or lack thereof) and the unjustified detention. *Id*. at 252 (citing *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989)).

Here, none of the defendants could have known that Andrew was being subject to unwarranted punishment, as it is not clear under Pennsylvania law that his punishment was actually unwarranted. *See* discussion, *supra* part III.A. Because the defendants did not have knowledge of a constitutional violation, Andrew is unable to satisfy the first element of the "clearly established" test. As a result, each the defendants is entitled to qualified immunity with respect to his claims.

Even assuming *arguendo* that Andrew was unconstitutionally detained beyond his maximum term of incarceration, he still fails to satisfy the "clearly established" test with respect to each defendant. With respect to Buskirk, Andrew does not allege a single fact that would establish Buskirk's knowledge of his sentencing calculations, proper or

improper. Therefore, Buskirk is entitled to qualified immunity with respect to Andrew's claims on the first element alone. With respect to Longenbach and Stanley, Andrew has demonstrated their knowledge of his claims, but he has not demonstrated the deliberate indifference necessary to satisfy the second element of the "clearly established" test.

Our Court determines whether a prison official acted with deliberate indifference by looking to "the scope of the official's duties and the role the official played in the life of the prison." *Montanez*, 603 F.3d at 252 (citation omitted). For over-detention claims, deliberate indifference is typically shown "in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation." *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) (citations omitted) (holding that an official's misinterpretation of a sentencing order was not deliberate indifference when that same officer also launched a sentencing investigation that led to a prisoner's release); *see also Sample*, 885 F.2d at 1111 (holding that an official was deliberately indifferent to a prisoner's claim by failing to follow relevant procedures, take remedial action, or inform the prisoner of other action he could take to resolve his problem).

Here, the record shows that Longenbach and Stanley, the two officials responsible for calculating prisoners' sentences, undertook investigative efforts in response to Andrew's over-detention claim. Longenbach then explained to Andrew that his sentence could not be calculated in the way he claimed based on the court orders the jail had received. He further informed Andrew that Andrew could obtain an attorney to procure the documentation necessary to support his sentencing calculation claim, which appeared

to be his only available remedy at the time. These efforts do not describe the inaction that our Court has found typical of deliberate indifference. Rather, the record makes clear that Andrew is unable to demonstrate the second element of the "clearly established" test with respect to Longenbach or Stanley. As a result, both of these defendants are entitled to qualified immunity on Andrew's claims.

## IV

For the foregoing reasons, we will affirm the judgment of the District Court.

11