J-S32040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :            PENNSYLVANIA
                                        :
            v.                          :
                                        :
                                        :
FRANK LEVENBERG                  :
                                        :
              Appellant               :     No. 2680 EDA 2018

Appeal from the Judgment of Sentence Entered December 19, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002146-2016

BEFORE: SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                     **FILED JULY 23, 2019**

Frank Levenberg (Appellant) appeals from the judgment of sentence imposed following revocation of his probation. Upon review, we affirm in part and vacate in part, and remand to the trial court for re-sentencing.

The trial court detailed the underlying facts:

On January 1, 2016 at approximately 3:15 A.M., [Appellant] approached his ex-wife, [the Victim], outside a bar located in Philadelphia. The Victim had an active Protection from Abuse Order against [Appellant] at the time. The Victim complained that [Appellant] grabbed her by the arm and attempted to pull her away from her then-boyfriend. An altercation ensued before the Victim and her boyfriend fled in a cab. [Appellant] was arrested and charged with contempt for violation of an order or agreement, simple assault, stalking, and harassment.

On August 7, 2017, [Appellant] entered a negotiated no contest plea on the charges of simple assault and stalking by repeatedly committing acts to cause fear, which was accepted by the Honorable Pamela Pryor Dembe. [Appellant] received a sentence of 11½ to 23 months [of] incarceration on the charge of simple assault and 7 years [of] reporting probation on the charge of stalking. All other charges were dropped. [Appellant] was

released immediately on probation. On August 21, 2017, [Appellant] filed a Motion for Reconsideration. On October 6, 2017, Judge Dembe denied [Appellant's] Motion for Reconsideration.

On December 19, 2017, a Violation of Probation Hearing was held before Judge Dembe. . . . Erika Levenberg ("E. Levenberg") [Appellant's] adult daughter, testified for the Commonwealth. E. Levenberg testified that she received calls through Facebook messenger from [Appellant] in which he ranted that the Victim had better return his possessions "or it won't end pretty." She testified that on August 15, 2016, approximately 8 days after [Appellant] entered into the negotiated guilty plea, E. Levenberg discovered sugar in the gas tank of her car. The car E. Levenberg was driving was registered in the name of her mother, [the Victim]. E. Levenberg testified that [Appellant] reached out to her soon thereafter and told her "soon your mom won't have a car at all" and that [Appellant] did not believe E. Levenberg when she told him that she was the person regularly driving the car. E. Levenberg stated that she spent $270 to drain the gas tank and that she was without a car for two or three days. E. Levenberg testified that two or three days later, [Appellant] called her and told her that he knew where she and her mother lived. E. Levenberg testified that she and her mother moved twice since he was arrested "[j]ust because of harassment. He kept coming breaking my mom['s] car windows, admitting it but there was not proof for cops to arrest him so we just had to keep moving." E. Levenberg testified that, to the best of her knowledge, [Appellant] did not know where they lived at the time of the hearing.

Next, the Victim testified. The Victim also testified that sugar was found in the gas tank of the car on August 15, 2016. She testified that the sugar was not present in the gas tank on August 14, 2016 and stated that it looked like a 5-pound bag was used to fill the tank. [The Victim] testified [Appellant] constantly told her previously that "bad things happen in the rain." [The Victim] testified that [Appellant] had a pattern of damaging her cars when it rained as follows:

Bad things happen in the rain are his words. Every time any vehicle was touched, it was raining. It was raining the 14th [into] the 15th overnight. Didn't get out and go check the car at three o'clock in the afternoon. You know, go to the gas station, there's sugar in the gas tank. Automatic bell

- 2 -

rings off. I've had no issues with anybody or anything the whole time [that [Appellant] was incarcerated].

[The Victim] further testified that "none of my stuff has ever been touched before by anybody except for him. I have him on video previously. I'm just tired of it. I want to live my life in peace without any problems from him." [The Victim] testified that she contacted [Appellant]'s probation officer a few days later in order to report the incident. [The Victim] testified that she does not speak to [Appellant] outside of [c]ourt and never informed [Appellant] where she was living while he was incarcerated.

Next, Defense Counsel highlighted information from [Appellant]'s probation report for the [c]ourt. Defense Counsel stated that [Appellant] was reporting to probation bi-weekly, which is extremely restrictive. He stated that [Appellant] has been taking his medication and tested negative on all of his drug tests.

Next, [Appellant] testified that he was never questioned by the police or arrested for criminal activity related to the incident described by E. Levenberg and [the Victim]. [Appellant] testified that his probation officer was the only person to question him related to this incident. [Appellant] denied coming into contact with an automobile driven by E. Levenberg or [the Victim]. He testified that he was living with a friend at the time this occurred and his roommate did not have a job at the time. [Appellant] stated that he did not want to know from the probation officer on what date the incident occurred but offered to obtain a statement from his roommate that he was at home at the time. [Appellant] testified that E. Levenberg was lying because of [the Victim]. He testified that he and E. Levenberg called each other back and forth on Facebook messenger and talked about property he inherited from his mother that had to be returned. [Appellant] further testified that [the Victim] received $10,000 from fraudulently stating that she was in an accident and told E. Levenberg that the money, along with any possessions purchased with the money, had to be returned. [Appellant] testified that he has a Protection From Abuse Order against [the Victim]. [Appellant] testified that [the Victim] has his mother's ashes and urn, that his mother is being denied a proper Jewish burial as a result, and that he is still angry at [the Victim] for that.

Next, Nicole Miller ("Miller") testified for [Appellant]. Miller testified that she is [Appellant]'s fiancé and that he has was living with her from sometime in August when he was released from custody until the time of the VOP Hearing. Miller testified that she and [Appellant] do a lot of things together, that [Appellant] is home a lot, and that she has never been suspicious about where he was. Miller testified that she goes with [Appellant] to the doctor, psychiatrist, psychologist, and probation office. Miller testified that [Appellant] has been taking his medication.

Next, Probation Officer Shawn Kearse ("Kearse") of the Adult Probation Mental Health Unit testified. Kearse testified that [Appellant] was compliant with probation. He testified that [Appellant] informed him that he was concerned about his daughter and wife making accusations and that he was going to file a criminal report against them.

The [trial court] found E. Levenberg and the Victim "very credible." The [c]ourt found [Appellant] in technical violation of parole/probation and imposed a sentence of 2 to 7 years [of] incarceration on the charge of stalking followed by 2 years [of] reporting probation on the charge of simple assault. . . .

\* \* \*

On December 20, 2017, [Appellant] filed a Motion for Reconsideration of the VOP Sentence. On December 27, 2017, Judge Dembe denied [Appellant]'s Motion for Reconsideration. On January 10, 2018, [Appellant] filed a Notice of Appeal. On January 11, 2018, [Appellant] filed a Second Motion for Reconsideration of VOP Sentence. On January 28, 2018, Judge Dembe issued a 1925(b) Order for [Appellant] to file a Concise Statement of Matters Complained on Appeal by February 20, 2018. On February 16, 2018, the [trial court]'s file was administratively transmitted to the Superior Court without an Opinion because Judge Dembe was no longer sitting in the Philadelphia Court of Common Pleas Criminal Division. On February 16, 2018, [Appellant] filed a Statement of Matters Complained of on Appeal. On March 26, 2018, the Superior Court dismissed [Appellant]'s appeal for failing to file a docketing statement pursuant to Pa.R.A.P. 3517.

On March 28, 2018, [Appellant] filed a *pro se* PCRA petition in which he claimed that Appellate Counsel was ineffective for failing

- 4 -

to file a docketing statement with the Superior Court. On August 28, 2018, [Appellant]'s direct appeal rights were reinstated *nunc pro tunc* by Judge Brinkley.

On August 28, 2018, [Appellant] filed a Notice of Appeal. On November 29, 2018, [Appellant] was sent an Order Pursuant to 1925(b). On December 5, 2018, [Appellant] filed his Statement of Matters Complained of on Appeal.

Trial Court Opinion, 12/18/18, at 2-6 (record citations and footnote omitted).

Appellant presents four issues on appeal:

1. Whether there was insufficient evidence to establish a violation of probation by a preponderance of evidence in violation of the Federal and State Due Process clauses?

2. Whether the weight of the evidence presented during the violation of probation (hereinafter "VOP") hearing so outweighed the evidence supporting the trial court's findings as to violation the Due Process Clauses?

3. Whether the trial court abused its discretion in sentencing Appellant to 2 to 7 years [of incarceration] for his technical violations?

4. Whether or not the sentence imposed for the count of Simple Assault was illegal?

Appellant's Brief at 3.

In his first issue, Appellant argues that the evidence was insufficient to sustain the trial court's decision to revoke his probation. Appellant asserts that the Victim and E. Levenberg failed to present any evidence other than their own testimony to support their claims that their vehicles sustained damage caused by Appellant.

Our standard of review of violation of probation proceedings is well established. "Revocation of a probation sentence is a matter committed to

the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." *Commonwealth v. Colon*, 102 A.3d 1033, 1041 (Pa. Super. 2014). "The burden of proof for establishing a violation of probation is a preponderance of the evidence, lesser than the burden in a criminal trial of proof beyond a reasonable doubt." *Id.* at 1042 (citation omitted). "The 'preponderance of the evidence' is the lowest burden of proof in the administration of justice, and it is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly in one's favor." *Commonwealth v. Ortega*, 995 A.2d 879, 886 n.3 (Pa. Super. 2010).

As we have explained:

"When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation." *Commonwealth v. Allshouse*, 33 A.3d 31, 37 (Pa. Super. 2011) (quotation marks and citations omitted). "[T]he reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated[.]" [*Ortega*, 995 A.2d at 886]. "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Id.*

*Colon*, 102 A.3d at 1041.

In rejecting Appellant's probation revocation sufficiency claim, the trial court explained:

> In the case at bar, direct and circumstantial evidence presented at the violation hearing was sufficient to prove by a preponderance of the evidence that [Appellant] was in technical violation of his probation. As a condition of the negotiated guilty plea [Appellant] entered on August 8, 2017, he was required to stay away from [the Victim]. E. Levenberg testified that [Appellant] threatened that [the Victim] had to return his property or "it won't end pretty." [N.T., 12/19/17, at] 9. Two days later, E. Levenberg discovered sugar in the gas tank of the car she was driving, which was registered to [the Victim]. This is a clear violation of the Stay Away Order.
>
> The timing of the discovery of sugar in the gas tank is crucial. The sugar was discovered only 8 days after [Appellant] entered a negotiated guilty plea for stalking and contempt of a Protection From Abuse Order and was released from custody. [The Victim] testified that [Appellant] boasted that bad things happen when it rains. [*Id.* at 17. The Victim] testified that it rained the previous night, so damage to her car in this instance fit the same pattern because [Appellant] had a history of damaging [the Victim]'s cars when it rained. [*See id.* at 17-18].
>
> Moreover, [Appellant]'s own testimony corroborated E. Levenberg's testimony. E. Levenberg stated that [Appellant] called her on August 13, 2017 and talked about property that she and [the Victim] had to return to [Appellant]. [*Id.* at 9.] E. Levenberg testified that [Appellant] was ranting and made threats. [*Id.*] [Appellant] testified that he called E. Levenberg in order to have his property returned and admitted that he felt upset about the subject. *Id.* at 28-29, 31. [Appellant] testified that he told E. Levenberg the following:
>
>> And that's when I told her, everything that you buy with that money you're going to have to return. You bought a car with it, you're going to lose the car due to the fact that the money was committed [sic] by fraud.
>
> *Id.* at 29. While [Appellant] denied putting sugar in the gas tank of the vehicle, he corroborated other parts of E. Levenberg's testimony which showed that he was continuing his past actions.

Circumstantial evidence of [Appellant] placing sugar in the gas tank of the car demonstrated a flagrant violation of probation and [Appellant]'s inability to reform.

Accordingly, there was sufficient evidence for the Court to revoke probation.

Trial Court Opinion, 12/18/18, at 9-10.

We agree. Our review of the transcripts of Appellant's violation of probation hearing reveals the following. Shortly after his original sentencing in this case, Appellant began threatening and harassing E. Levenberg and the Victim. N.T., 12/19/17, at 10-11, 17. Appellant told E. Levenberg that "soon your mom won't have a car at all" and that two or three days later she discovered sugar in the Victim's car. *Id.* at 10-11. According to the Victim, Appellant repeatedly told her that "bad things happen in the rain." *Id.* at 17. The Victim stated that every time her vehicle was vandalized, it occurred during a rain storm. *Id.* The Victim also reported that she had no instances of anyone vandalizing her property while Appellant was incarcerated. *Id.* As stated above, the trial court found E. Levenberg's and the Victim's testimony to be "very credible." Trial Court Opinion, 12/18/18, at 5. Based on the testimony, we conclude that the trial court did not abuse its discretion in determining that the Commonwealth satisfied its burden of proving, by a preponderance of the evidence, that Appellant violated his probation. *See Colon*, 102 A.3d at 1041-42.

In his second issue, Appellant argues that the trial court's determination that he violated his probation was against the weight of the evidence.

Specifically, Appellant asserts that the Commonwealth failed to present any evidence corroborating the stories of the Victim and E. Levenberg. Consequently, Appellant contends that their testimony was not credible.

As the Commonwealth points out, there is no authority that indicates that we may entertain on appeal a challenge to the weight of the evidence from a probation revocation by the trial court. *See Commonwealth v. McDermott*, 547 A.2d 1236, 1246 (Pa. Super. 1988) (stating that there was "no authority for appellant's assumption that a challenge to the weight of the evidence may properly be entertained on appeal from parole revocation by the trial court"). "A [violation of probation (VOP)] hearing differs from a trial, as probation and parole are not part of the criminal prosecution; the full panoply of rights due a defendant in a criminal trial does not apply at a VOP hearing." *Commonwealth v. Mullins*, 918 A.2d 82, 85 (Pa. 2007). Indeed, the standards for a violation of probation hearing are distinctly different from a trial, as a VOP hearing "takes place without a jury, with a lower burden of proof, and with fewer due process protections." *Id.* Accordingly, on this authority, Appellant's weight of the evidence claim presents no basis for relief.

Moreover, Appellant's argument does nothing more than ask that we overturn the trial court's credibility determinations with respect to E. Levenberg and the Victim. It is well-settled that an appellate court cannot, on a weight of the evidence review, substitute the fact-finder's credibility determinations with its own. *Commonwealth v. Blackham*, 909 A.2d 315,

320 (Pa. Super. 2006) ("It is not for this Court to overturn the credibility determinations of the fact-finder"). Therefore, even if Appellant could present a weight of the evidence claim to this Court, we are bound by the trial court's credibility determinations, which, as demonstrated by our analysis of Appellant's challenge to the sufficiency of the evidence, are supported by the record. Therefore, Appellant's second issue fails.

For his third issue, Appellant argues that the trial court abused its discretion in sentencing him because his sentence was harsh and excessive and not "in accordance with the fundamental norms [of] 42 Pa.C.S.[A.] § 9721[(b)]." Appellant's Brief at 12.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." ***Id.*** We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing

code or is contrary to the fundamental norms of the sentencing process."

***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted).

Here, Appellant preserved his discretionary aspects of sentencing claim by raising it in a post-sentence motion. ***See*** Post-Sentence Motion for Reconsideration of Sentence, 12/20/17. Appellant also filed a timely notice of appeal and included in his appellate brief a concise statement of the reasons relied upon for the allowance of his appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). ***See*** Appellant's Brief at 11. Thus, we must determine whether Appellant's discretionary aspects of sentencing claim raises a substantial question for our review.

Appellant argues that his sentence is excessive and that the trial court failed to consider the appropriate statutory factors of 42 Pa.C.S.A. § 9721(b). This Court has held that an excessive sentence claim – in conjunction with an assertion that the court failed to consider the factors of Section 9721(b) – raises a substantial question. ***Commonwealth v. Roane***, 204 A.3d 998, 1002-03 (Pa. Super. 2019). Accordingly, we turn to the merits of Appellant's sentencing claim.

Our standard of review for discretionary aspects of sentencing claims is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather,

- 11 -

the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Horning*, 193 A.3d 411, 418 (Pa. Super. 2018) (citation omitted), *appeal denied*, 204 A.3d 370 (Pa. 2019).

Section 9721(b) of the Sentencing Code sets forth general sentencing standards for trial courts and provides, in pertinent part:

> **(b) General standards.—**. . . the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences an offender following revocation of probation, county intermediate punishment or State intermediate punishment or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

As our Supreme Court has explained, however, a trial court does not need to adhere to all of the mandates of Section 9721(b) when resentencing an individual following the revocation of probation:

> The sentencing court's institutional advantage is, perhaps, more pronounced in fashioning a sentence following the revocation of probation, which is qualitatively different than an initial sentencing proceeding. At initial sentencing, all of the rules and procedures designed to inform the court and to cabin its discretionary sentencing authority properly are involved and play a crucial role. However, it is a different matter when a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence. For example, in such a case, contrary to

when an initial sentence is imposed, the Sentencing Guidelines do not apply, and the revocation court is not cabined by Section 9721(b)'s requirement that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.[A.] § 9721. **See Commonwealth v. Reaves**, [] 923 A.2d 1119, 1129 ([Pa.] 2007) (citing 204 Pa.Code. § 303.1(b) (Sentencing Guidelines do not apply to sentences imposed as result of revocation of probation)).

Upon revoking probation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S.[A.] § 9771(b). Thus, upon revoking probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence[.]

**Commonwealth v. Pasture**, 107 A.3d 21, 27-28 (Pa. 2014).

Therefore, to the extent Appellant challenges the trial court's failure to consider the appropriate factors under Section 9721(b) in fashioning his sentence, such claim does not afford a basis for relief. **See id.** The trial court was only limited by the maximum sentence it could have imposed at the time of Appellant's original sentencing. **See id.** The trial court explained:

In the case at bar, the [trial court] properly [re]-sentenced [Appellant] to a term of 2 to 7 years [of] incarceration on the charge of stalking. After the [trial court] revoked [Appellant]'s probation anticipatorily, the [c]ourt was limited only to the maximum sentence that [it] could have imposed at the time of the original sentencing. Indeed, it must be underscored that [Appellant] was released from custody for only 8 days after entering into a negotiated no contest plea on the charges of stalking and simple assault before he returned to damaging the same victim's car. [Appellant] still had a valid Protection From Abuse Order against him at the time that he damaged the car, which indicates that he was likely to commit another crime if he was not imprisoned. [Appellant] has never expressed remorse for

his actions. Furthermore, [the trial court] accepted [Appellant]'s negotiated no contest plea, heard the underlying facts, and was familiar with [Appellant] when she imposed his original sentence. Instead of simply complying with the terms and conditions of his probation so he could finish out his sentence, [Appellant] continued to disregard the [c]ourt's directions and did whatever he wanted to do.

Trial Court Opinion, 12/18/18, at 12-13.

Based on the foregoing, and our review of the certified record on appeal, we conclude that the trial court sentenced Appellant in accordance with the principles outlined in **Pasture**. Consequently, the trial court did not abuse its discretion in re-sentencing Appellant following the revocation of his probation to two to seven years of incarceration on his stalking charge.

Finally, we recognize that at the conclusion of its Rule 1925(a) opinion, the trial court, *sua sponte*, asks this Court to vacate the sentence of two years of probation it imposed on Appellant's simple assault charge following the revocation of Appellant's parole. **See id.** at 13. The trial court asserts that the sentence is illegal because the trial court originally imposed a sentence of 11½ to 23 months of incarceration on the simple assault charge and consequently, its only sentencing option upon revoking Appellant's parole on that charge was to recommit him to that sentence. **See id.** We agree. As we explained:

> Unlike a probation revocation, a parole revocation does not involve the imposition of a new sentence. Indeed, there is no authority for a parole-revocation court to impose a new penalty. Rather, the only option for a court that decides to revoke parole is to recommit the defendant to serve the already-imposed, original sentence.

- 14 -

***Commonwealth v. Kalichak***, 943 A.2d 285, 290 (Pa. Super. 2008).

Therefore, because the trial court did not recommit Appellant to serve the remainder of his original 11½ to 23 months of incarceration on his simple assault charge upon revoking his parole, and instead imposed a two-year term of probation, we conclude that his sentence is illegal.

In sum, we affirm the revocation of Appellant's probation and parole. However, because we have determined the trial court imposed an illegal sentence, and the trial court ordered Appellant's illegal probationary sentence for simple assault to follow his term of incarceration for stalking, we vacate Appellant's judgment of sentence on all charges and remand this matter to the trial court for resentencing. ***See Commonwealth v. McCamey***, 154 A.3d 352, 359 (Pa. Super. 2017) (Where "the resentencing has the potential to disrupt the trial court's entire sentencing scheme, we vacate all of Appellant's sentences and remand for resentencing at all counts."); ***see also Commonwealth v. Vanderlin***, 580 A.2d 820, 831 (Pa. Super. 1990) ("[I]f a trial court errs in its sentence for one count in a multi-count case, then all sentences for all counts will be vacated so that the court can re-structure its entire sentencing scheme.").

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/19