J-S25042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON PATTERSON | : | |
| | : | |
| Appellant | : | No. 1881 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 24, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000123-2018

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:　　　　　　**FILED NOVEMBER 14, 2023**

Brandon Patterson (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following the revocation of his probation pursuant to a 2018 negotiated guilty plea to one count each of robbery and conspiracy.[1]  On appeal, Appellant contends the trial court abused its discretion when it sentenced him to a term of five to 15 years' incarceration without considering his rehabilitative needs.  After review, we affirm.

We glean the underlying facts of Appellant's 2018 guilty plea from the trial court opinion:

> [O]n October 10, 2017, [Appellant was arrested] on charges of kidnapping, robbery and related offenses, arising from conduct occurring on September 14, 2017.  [It was alleged that Appellant,

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 903(c).

"in the course of committing a theft, . . . in concert with another person, threatened or intentionally put another in fear of serious injury by approaching the complainant, [ ] and threatening to shoot him while taking his wallet/debit card and attempting to withdraw money from the [complainant's] bank account and also forcing the complainant to travel a substantial distance into a nearby store and to sell his phone to a kiosk so the defendant could take the proceeds without permission."]

On November 30, 2018, Appellant entered a negotiated guilty plea on charges of robbery, as a felony of the first degree and conspiracy to commit robbery also as a felony of the first degree[.] Appellant was sentenced to [concurrent terms of] one to three years incarceration on each conviction, followed by two years of probation on each conviction. [T]he probationary periods were consecutive to the sentences of incarceration, but concurrent to each other. [The court also imposed the following conditions to be completed during Appellant's incarceration: participation in educational programming, vocational training, life-skills training, and anger management. *See* Order — Negotiated Guilty Plea, 11/30/18.]

Trial Ct. Op., 11/17/22, at 1-2, 1 n.1.

While on probation, Appellant was charged with robbery for an incident that occurred on March 29, 2021, where three persons stole two video game consoles after arranging a meeting with the seller to purchase them. Trial Ct. Op. at 2; *see* N.T. VOP h'rg Vol 1, 6/24/22, 14, 16-18. Appellant was subsequently charged with robbery, conspiracy, and violations under the Uniform Firearms Act related to the March 29th incident. Trial Ct. Op. at 2.

Following a preliminary hearing, the charges were held for court and an information was issued at Criminal Docket CP-51-CR-0000123-2018. On November 15, 2021, the Commonwealth *nolle prossed* the charges arising from the March 29th incident. Trial Ct. Op. at 2. The trial court denied the Commonwealth's request to lift the *nolle pros*. *Id.*

- 2 -

On May 27 and June 24, 2022, the trial court held a bifurcated violation of probation (VOP) evidentiary hearing regarding the March 29, 2021, robbery. *See* N.T. VOP h'rg Vol. 1, 5/27/22, at 11. Over the course of the hearings, the Commonwealth presented Mahanad Nasralla (Victim), who stated he listed two PlayStation 5 consoles for sale on an app called "OfferUp." N.T., 6/24/22, at 7. After speaking with a potential buyer through the app and text messages, Victim drove to an address given to him by the buyer to complete the sale. *Id.* at 10-11, 14. When Victim arrived, he "was approached by two men from the back[,]" and he showed them the game consoles he was selling. *Id.* at 14. A third male, later identified as Appellant, approached Victim, lifted his hoodie, revealing a firearm, and said "Are you lost? Get the fuck off my block." *Id.* at 14, 16. Appellant's two cohorts then took the PlayStation 5 consoles and all three men "ran in the opposite direction[.]" *Id.* at 17-18, 27. Victim drove off and called the police. *Id.* at 18-19. At the June 24th hearing, Victim identified Appellant as the assailant who threatened him with a firearm. *Id.* at 7.

The Commonwealth also presented Appellant's probation officer, Tanelle Griffin, who testified that she recommended Appellant "be supervised under the Intensive Case Load Unit when he is released" with a GPS monitor. N.T., 5/27/22, at 11-12. Officer Griffin noted Appellant had issues maintaining employment and housing in the past and requested that before his release he have a "viable home plan." *Id.* at 12. The Commonwealth also offered Officer

Griffin's "report"[2] into evidence. *Id.* at 5-6. The trial court declined to release Appellant due to his "history while under supervision[.]" *See id.* at 12.

Appellant invoked his right to allocution at both hearings. At the May 27, 2022, hearing, he read a letter to the trial court where he asked the court to see him as an "individual[ and] a human being . . . who . . . made some poor decisions in life," but "is able to reflect and learn from [those] decisions[.]" N.T., 5/27/22, at 18. He also stated he had "taken the time to do some cognitive restructuring" and has taken a "new direction in life[.]" *Id.* at 18-19. The trial court then responded that it did "consider [Appellant] human[.]" *Id.* at 19. At the June 24th hearing, Appellant asserted his innocence, telling the court he was implicated in the crime due to "mistaken identity." *See* N.T., 6/24/22, at 44. He then stated that he "used [the time he was in custody waiting for the VOP hearing] to get better" through "spirituality, mentally, dealing with things [him]self, [and] reading more self-help books." *Id.* Appellant also noted that he had "a couple of jobs" before being arrested for this incident but was fired after his employer completed a background check. *See id.* at 44-45. Appellant's mother also spoke on his behalf, saying Appellant "was trying to do better[ and] applied for a couple of jobs." *Id.* at 41.

---

[2] The trial court, parties, and witness do not specify what kind of report the officer provided to the court. Moreover, the document was not identified as an exhibit at the hearing. However, based on a review of the record and statements at the hearing, it appears the document was a "Pretrial Investigation Report."

At the conclusion of the June 24, 2022, hearing, the trial court found Appellant was in a technical violation and revoked his probation. *See* N.T., 6/24/22, at 37. It noted the report from the Office of Probation and Parole showed a "history" of Appellant doing "horribly on state parole before he even began serving . . . probation[.]" *See id.* at 39. The court also stated: (1) it mandated "a number of conditions" as part of Appellant's 2018 sentence, but it did not "seem like [he] pursued most of them and instead proved to be a very difficult person to supervise due to his assaultive behavior[;]" (2) it imposed Appellant's 2018 sentence based on his "age[ and] thinking that maybe [his behavior] was a phase[,]" but it was now "clear [that Appellant was] not going through a phase" as he had "continued to act the way that he[ had] been acting[;]" (3) Appellant's statement at the proceedings were not persuasive and he "show[ed] a continued lack of contrition[;]" (4) one of the conditions on his underlying sentence was that he "have no access to firearms or replicas" and yet, he used a firearm to threaten serious bodily injury; and (5) Appellant "continue[d] to be not amenable to supervision[ and was] a serious threat to the safety of the community." *Id.* at 46-47. The court then imposed two concurrent terms of five to 15 years' incarceration — one for each of his 2018 convictions, robbery and conspiracy. It also imposed the following conditions:

> While in custody, [Appellant] should complete programs in vocational training, life skill training, anger management, individual counseling, as well as educational programs. All of these must be completed in order for him to be eligible for parole . . . .

*Id.* at 48.

Appellant's counsel then asked if the trial court said "something about drug treatment" for Appellant. *See* N.T., 6/24/22, at 50. The court replied it did not "have anything indicating [Appellant] ha[d] a drug problem[,]" but asked counsel if she would like to include treatment in the sentencing order. *Id.* Appellant's counsel did not request drug treatment. *See id.*

While imposing sentence and before the court informed Appellant of his appeal rights, Appellant caused a disturbance and was removed from the courtroom for "safety" reasons. *See* N.T., 6/24/22, at 48-49. The court held a subsequent proceeding on June 27, 2022, solely to inform Appellant of his appeal rights on the record. *See* N.T. Sentencing, 6/27/22, at 4-5. Appellant's counsel also read another letter from Appellant, in which he apologized for his conduct at the June 24th proceeding, asserted his innocence, and stated he obtained employment, was "on the right track" and "better[ed him]self" while incarcerated and awaiting sentencing. *Id.* at 6-8.

At the June 27, 2022, proceeding, the trial court stated it would make notation of the fact that Appellant was searching for employment and reported to the office of probation himself after the March 29, 2021, robbery. *See* N.T., 6/27/22, at 8-9. It also recognized Appellant was "young" and it would "likely" recommend that if Appellant committed no infractions while incarcerated and completed the prescribed programs in his sentence, that he would be released on his minimum date because "that [would] indicate [Appellant is] serious

about making a change." *Id.* at 9. The court then informed Appellant of his right to appeal as follows:

> You have ten days **from today's date** within which to ask me to reconsider your sentence. You have 30 days **from today's date** within which to appeal the finding of technical violation and/or the sentence. . . .

*Id.* at 10 (emphases added).

Appellant filed a timely post sentence motion for reconsideration of his sentence, which the trial court denied on July 11th.[3] Appellant then filed a notice of appeal on July 27th. The trial court did not order Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b), but did issue a Pa.R.A.P. 1925(a) opinion on November 17, 2022, which addressed the issues raised in Appellant's post-sentence motion.[4]

On October 12, 2022, this Court issued a rule to show cause order to explain why Appellant's appeal should not be quashed as untimely. *See* Order, 10/12/22. We explained that Appellant's probation revocation sentence was imposed on June 24th, and he had 30 days from that date to

---

[3] Post-sentence motions must be filed no later than ten days from the imposition of sentence after revocation. *See* Pa.R.Crim.P. 708(E). Herein, the tenth day following the imposition of sentence was Monday, July 4, 2022, which was a national holiday. Therefore, Appellant's post-sentence motion, that was filed on July 5th, was timely. *See* 1 Pa.C.S. § 1908 (for computations of time, if the last day of any such period shall fall on Saturday, Sunday, or a on a legal holiday, such day shall be omitted from the computation).

[4] As will be discussed below, Appellant only raises two of his post-sentence issues on appeal and addresses them together.

file a notice of appeal, which he did not do. *Id.*; Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after imposition of sentence); Pa.R.Crim.P. 708(E) (filing of a motion to modify a VOP sentence will not toll the 30-day appeal period). Appellant responded that the trial court informed him the time in which he had to file post-sentence motions and a notice of appeal began on June 27th, the day the court informed him of his appeal rights. *See* Appellant's Response to the Court's Intent to Quash Appellant's Direct Appeal as Untimely, 10/18/22, at 2 (unpaginated). Thus, Appellant asserted his notice of appeal was timely. The rule to show cause order was discharged and the matter was referred to the merits panel. Therefore, we first address the timeliness of Appellant's appeal.

This Court cannot extend the time in which a petitioner may file an appeal, however when there is a "breakdown in the courts[,]" we may grant limited relief to excuse the late filings. *See Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007). This Court has held that such a breakdown occurs "where the trial court, at the time of sentencing, either failed to advise [a petitioner] of his post-sentence and appellate rights or misadvised him." *Id.* (citations omitted). Here, the trial court imposed Appellant's sentence on June 24, 2022. However, it was unable to inform Appellant of his appellate rights at that time as he needed to be removed from the courtroom. *See* N.T., 6/24/22, at 48-49. The court informed Appellant of his right to appeal three days later, on June 27th. It also advised Appellant he had 30 days from the date of the hearing to file a notice of appeal. *See*

- 8 -

N.T., 6/27/22, at 10. As per the trial court's instructions, Appellant then filed his notice of appeal within 30 days of that date. We conclude this conduct amounted to a breakdown of court processes, which excuses the untimeliness of his notice of appeal. *See Patterson*, 940 A.2d at 498. Thus, we may proceed with our review.

Appellant raises one issue on appeal:

> Because it is a fundamental sentencing norm that every defendant be given a sentence with consideration of their rehabilitative needs, where the revocation court gave no consideration to [Appellant's] need for employment, housing, and drug treatment, was the sentence excessive, violative of the Sentencing Code, and the norms that underlie the sentencing process?

Appellant's Brief at 3.

Appellant's argument challenges the discretionary aspects of his sentence. This Court has stated:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted).

It is well established that such a challenge does not entitle an appellant to "review as of right." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted). Rather,

[b]efore this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [708(E) regarding post-sentence motions after revocation]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citation omitted); *see also Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) ("[R]eview of a discretionary sentencing matter after revocation proceedings is encompassed by the scope of this Court's review."); *Commonwealth v. Kalichak*, 943 A.2d 285, 289 (Pa. Super. 2008) ("when a court revokes probation and imposes a new sentence, a criminal defendant needs to preserve challenges to the discretionary aspects of that new sentence either by objecting during the revocation sentencing or by filing a [motion to modify] sentence"). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Caldwell*, 117 A.3d at 768 (citation omitted).

In the present case, Appellant filed a timely post-sentence motion raising the issue *sub judice* and we have accepted his notice of appeal as timely filed. *See Patterson*, 940 A.2d at 498. In addition, his brief includes

the requisite concise statement of reasons relied upon for appeal pursuant to Pa.R.A.P. 2119(f). **See** Appellant's Brief at 9-11. Thus, we must determine whether he has raised a substantial question justifying our review.

Appellant alleges that the trial court "put nothing on the record to indicate that it considered [Appellant's] challenges, nor his rehabilitative needs" and imposed an "excessive sentence[.]" Appellant's Brief at 10. This assertion amounts to a substantial question. **See Commonwealth v. Akhmedov**, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*) ("[A]n excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question.") (citation omitted); **see also Commonwealth v. Baker**, 72 A.3d 652, 662 (Pa. Super. 2013) (concluding a challenge that the trial court did not consider rehabilitative needs raises a substantial question).

Though Appellant has raised a substantial question, we conclude that he is not entitled to relief. When imposing a sentence, the trial court must consider the factors set out in 42 Pa.C.S.§ 9721(b), which includes "the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant." **Commonwealth v. Clemat**, 218 A.3d 944, 960 (Pa. Super. 2019) (citation omitted). First, we address Appellant's contention that the court did not consider his "challenges" or rehabilitative needs. **See** Appellant's Brief at 10, 16.

Preliminarily, we note

following revocation, a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statutes in question. Simply put, since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing. The rationale for this is obvious. When sentencing is a consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant . . . .

*Commonwealth v. Pasture*, 107 A.3d 21, 28 (Pa. Super. 2014) (citation omitted; *See also Commonwealth v. Rominger*, 199 A.3d 964, 970 (Pa. Super. 2018) (A "lengthy discourse" is not required of the sentencing court to explain why it imposed a specific sentence where the record reflects the court's consideration of "the facts of the crime and character of the offender.").

Here, the trial court concluded it carefully considered all relevant factors, including Appellant's rehabilitative needs. *See* Trial Ct. Op. at 9, 11. Specifically, it highlighted that "Appellant was the beneficiary of a generous plea deal" and instead "of taking advantage of the opportunity, [he] demonstrated an inability to abide by rules" during his parole and probation. *Id.* at 11. We agree that the trial court considered the necessary factors before imposing a sentence.

Over the course of two hearings, Appellant admitted he made "poor decisions[,]" but learned from them, had since taken "a new direction in life[,]" and "used [his time in custody] to get better[.]" *See* N.T., 5/27/22, at 18-19; N.T., 6/24/22, at 44. After hearing from Appellant, the trial court

- 12 -

reminded him that it originally imposed a shorter sentence with conditions such as classes in anger management, vocational skills, education, and life skills — which Appellant failed to pursue — due to his age and the court's belief his conduct was a "phase." **See** N.T., 6/24/22, at 46-47. It emphasized that Appellant was a difficult person to supervise and used a firearm to commit the subsequent offense, which violated one of those conditions. **Id.** at 47. It then noted Appellant's statements during the hearings, wherein he claimed he was taking a "new direction in life[,]" were not persuasive and his actions proved, instead, he was "not amenable" to supervision. **See id.**; N.T. 5/27/22, at 19.

The trial court not only had the information provided to it during the VOP hearings, but also had knowledge of Appellant's character and rehabilitative needs because it presided over the earlier proceedings related to his underlying 2018 offenses. **See Pasture**, 107 A.3d at 28. As such, a "lengthy discourse" explaining the court's rationale behind the sentence was unnecessary. **See id.**; **Rominger**, 199 A.3d at 970. Still, though, the record reflects the court carefully considered Appellant's rehabilitative needs and challenges when it thoughtfully imposed a sentence including individual counseling and programs in vocational training, education, life-skills, and anger management. **See** N.T., 6/24/22, at 48. The record also reflects the court would recommend Appellant for parole after serving his minimum sentence if he completed the classes and did not have any infractions. **See**

*id.*; N.T., 6/27/22, at 9. The court commented that this would establish Appellant was "serious about making a change[.]" ***See*** N.T., 6/27/22, at 9.

We also note that in Appellant's question presented, he asserts the trial court did not consider his need for drug treatment. ***See*** Appellant's Brief, at 3. While he did not provide a specific argument regarding this concern, we remind Appellant that during the June 24, 2022, hearing, the court noted it was not aware of Appellant having a drug abuse problem and asked counsel if Appellant needed drug treatment. ***See*** N.T., 6/24/22, at 50. Counsel did not answer the court's question in that regard or request drug treatment for Appellant. ***Id.*** Accordingly, the record again demonstrates the court considered Appellant's challenges and rehabilitative needs before imposing a sentence. As Appellant cannot establish the court abused its discretion or ignored the law in imposing his sentence, no relief is due. ***See Zirkle***, 107 A.3d at 132.

Appellant also alleges his sentence is excessive. Appellant's Brief at 17. By way of background, after a court determines a defendant is in technical violation of their probation, "the resentencing guidelines shall be the same as the initial sentencing guidelines[.]" 204 Pa. Code. § 307.3(a). At the time of Appellant's 2018 guilty plea, the offense gravity score for robbery was 10 and for conspiracy was nine. Appellant's Brief at 17; 204 Pa. Code §§ 303.3(c)(1),

303.15.[5]  Appellant's prior record score at that time was a zero.  Appellant's

Brief at 17.  The guidelines provide a standard range of 22 to 36 months'

incarceration, plus or minus 12 months for robbery and 12 to 24 months'

incarceration, plus or minus 12 months for conspiracy.  *Id.*; 204 Pa. Code §

303.16(a).    Therefore,  Appellant's  minimum  sentence  of  five  years'

incarceration  was  above  the  aggravated  range  but  within  the  statutory

maximum for first-degree felonies.  *See* 18 Pa.C.S. § 1103(1) (statutory

maximum, sentence for first-degree felonies is 20 years' incarceration).

Returning  to  Appellant's  argument,  he  avers  his  five-year  minimum

sentence exceeds the standard range guidelines as well as the aggravated

range guidelines for sentencing.  Appellant's Brief at 17.  Appellant also

contends  the  sentence  was  excessive  because  it  failed  to  consider  his

rehabilitative needs.  *Id.* at 18.

Section 9781(c) of the Pennsylvania Sentencing Code dictates that this

Court should vacate a sentence and remand the matter to the sentencing court

where the defendant was "sentenced outside the guidelines **and** the sentence

was  unreasonable."    ***Commonwealth v. Smith***, 206 A.3d 551, 567 (Pa.

Super.  2019)  (emphasis  added),  *citing*  42  Pa.C.S.  9781(c)(3).    What

constitutes an "unreasonable" sentence is not strictly defined.  However,

---

[5] Neither the completed Pennsylvania Sentencing Guideline forms nor the transcript from Appellant's 2018 guilty plea sentencing were included in the certified record.  Nevertheless, the Commonwealth and the trial court do not contradict Appellants' statements regarding offense gravity scores and prior record score.  Therefore, we will rely on Appellant's statements in his brief.

a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors[ — which are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the opportunity of the sentencing court to observe the defendant; (3) findings upon which the sentence was based; and (4) the sentencing guidelines.]

[I]n addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b).

Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Id.* at 567-68 (some citations omitted & paragraph breaks inserted).  Further, "[a] trial court does not necessarily abuse its discretion in imposing a seemingly harsh post-revocation sentence where the defendant originally received a lenient sentence and then failed to adhere the conditions imposed on him." ***Commonwealth v. Schutzues***, 54 A.3d 86, 99 (Pa. Super. 2012) (citation omitted).

Here, the trial court stated Appellant's sentence was not manifestly excessive or unreasonable.  Trial Ct. Op. at 12.  Specifically, it noted:

The record demonstrates that the court carefully considered the testimony of Appellant's mother, Appellant's allocution, the nature of the original offense for which he was on probation, Appellant's record which is "replete with serious violations" and that "he did horribly" while under supervision[,] the nature of the

- 16 -

> violative conduct, and Appellant's lack of contrition. [*See* NT 6/24/22, at 39, 41, 43-48.]
>
> After considering all the evidence before it, the court did not sentence irrationally, but instead imposed a sentence that was the product of the court's application of its sound judgment to the record before it. The result was a sentence that was neither manifestly excessive, nor unreasonable.

Trial Ct. Op. at 12.

We conclude the trial court did not abuse its discretion in imposing a sentence above the aggravated range. Appellant merely argues that his sentence was excessive due to the trial court's failure to consider his rehabilitative needs. Appellant's Brief at 18. However, the record establishes the court imposed a sentence outside of the sentencing guideline ranges because of the nature of the offense, Appellant's prior history, the threat he posed to the community, **and** his rehabilitative needs. *See* N.T., 6/24/22, at 45-47. We reiterate that after hearing from Appellant, his mother, and his probation officer, the court was thoughtful in the details of imposing his sentence. The court required Appellant to undergo individual counseling, and required him to complete programs in vocation skills, life-skills, education, and anger management. *See id.* at 48. The court then advised Appellant that if he completes those classes and had no infractions during his incarceration, the court was likely to recommend him for parole on his minimum release date. *See* N.T., 6/27/22, at 9. Appellant failed to establish the court abused its discretion when it imposed a sentence above the aggravated range, and as such, no relief is due. *See Smith*, 206 A.3d at 567; *Zirkle*, 107 A.3d at 132; *Schutzues*, 54 A.3d at 99.

- 17 -

Because the trial court did not abuse its discretion when it imposed Appellant's probation revocation sentence, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2023