J-S09029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ADDIEL BURGOS | : | |
| | : | |
| Appellant | : | No. 546 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004662-2019

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JUNE 11, 2024**

Appellant Addiel Burgos appeals from the judgment of sentence imposed following the revocation of his probation.  On appeal, Appellant challenges the discretionary aspects of his sentence.  We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> The underlying criminal case that had formed the genesis of this court's probationary supervision had been derived from events of May 29, 2019[, and] involved ongoing domestic violence between Appellant and Cynthia Espada-Cintron, his former girlfriend and mother of his minor child.  The reported violations that resulted in the Appellant's current period of confinement directly result from the Appellant's incessant violent behavior towards this same victim that had also endangered at least two children in flagrant disregard of this court orders and judgments of sentence and human decency.
>
> On or about May 29, 2019, Cynthia Espada-Cintron, hereinafter referred to as "Complainant," was driving her vehicle with her and Appellant's young child, when Appellant drove up next to her in his Mercedes Benz vehicle while she had been stopped at a red

light. Appellant rolled down his window, brandished a firearm at her, and directed Complainant to "Stop right there, bitch." (N.T. 2/23/2021, p. 20). Complainant immediately drove away, filed a criminal complaint, and requested a Protection from Abuse [(PFA)] order against Appellant. *Id.*

On February 23, 2021, Appellant, represented by Robert M. Gamburg, Esquire, tendered a negotiated guilty plea to Violation [of the] Uniform Firearms Act—possession of a firearm by prohibited person,[1] graded as a felony of the first degree, and simple assault,[2] graded as a misdemeanor of the first degree. Other charges were downgraded or deleted as part of the plea deal for a sentence that had significantly deviated downward from the recommended sentencing guidelines with the Commonwealth's attorney.

Following argument and colloquy, this court accepted the tendered negotiations and imposed an order and judgment of sentence to the agreed upon term of eleven and a half (11.5) months to twenty-three (23) months of incarceration followed by five (5) years of probation for the first-degree felony offense of possession of a firearm prohibited, and two (2) years of consecutively running period of probation for the second-degree misdemeanor charge of simple assault. [Appellant was ordered] to be supervised by the Domestic Violence Unit of the Philadelphia Adult Probation and Parole Department with identified strict conditions including participation in Batterer's Therapy, and credit for calculated custodial time served was provided. The Commonwealth . . . formally withdrew the remaining charges which included additional felony graded offenses.

Trial Ct. Op., 7/28/23, at 1-3 (some formatting altered).

---

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. § 2701(a).

The trial court informed Appellant of the conditions of his probation which included that he was to have no contact with Complainant.[3]  **_See_** N.T., 2/23/21, at 26.  The trial court also ordered Appellant to attend drug and alcohol treatment, anger management counseling, undergo random drug and alcohol screens, and submit to random home and vehicle checks for drugs and weapons.  Appellant was ordered to have no contact with illegal narcotics, alcohol, and weapons.  The trial court further ordered that Appellant was prohibited from being in a vehicle or residing in a house where illegal drugs or weapons were located.  Additionally, the trial court prohibited Appellant from posting on social media any posts that featured narcotics, weapons, or proceeds from narcotics or weapons.  **_Id._** at 31-32.  Finally, the trial court ordered Appellant to obtain legitimate employment.  **_Id._** at 32.

Appellant began serving the probation portion of his sentence on May 24, 2021.  Thereafter, the trial court explained:

> [P]er the negotiated terms within the order and judgment of sentence, Appellant was assigned to the Domestic Violence Unit of the City of Philadelphia Adult Probation and Parole Department and was instructed to report weekly, with an initial meeting scheduled for June 2, 2021 and to begin its Batterer's Therapeutic conditional program.
>
> The Domestic Violence Treatment Unit's rehabilitation process requires that defendants vocalize their acceptance of responsibility for their conduct.  . . . Appellant's initially assigned

---

[3] The trial court also prohibited Appellant from contacting his biological children until protective supervised contact could be secured through family court, and the trial court stated that any contact concerning an exchange of custody must occur through a third-party and occur at a police station.  **_See_** N.T., 2/23/21, at 27-30.

supervising Probation Officer utilized the initial meeting to discuss Appellant's charges. However, at this meeting, Appellant adamantly denied committing any wrongdoing that had been recited as forming the underlying charges. [Appellant] boldly claimed that he had entered the guilty plea simply to get out of jail. In response, Appellant's Probation Officer reported Appellant's violation of his probationary conditions and requested that this court hold an evidentiary violation hearing. This court scheduled the requested hearing for July 15, 2021.

At the July 15, 2021, hearing, Appellant's Probation Officer relayed the above facts, but indicated that Appellant had been otherwise in compliance. Following colloquy, this court refrained from revoking Appellant's probation at that time. Instead, this court scheduled a ninety (90) day compliance status hearing for October 14, 2021, and reiterated Appellant's required compliance with all the terms of his probation. At the October 14, 2021 status hearing, Appellant's Probation Officer reported that Appellant had complied with the conditions, and this court scheduled an additional status of compliance hearing for December 17, 2021.

In the interim however, on October 15, 2021, [Complainant] contacted Appellant's Probation Officer and reported that Appellant had punched her in the face and injured her to the extent that she had to seek emergency hospital treatment of her wounds. She informed the officer that on October 13, 2021, Appellant had driven to her house and that evening, she and Appellant had visited "Club Makumba" in Philadelphia, on Castor Avenue. While at the club, Complainant received and answered a cellular telephone call from her current boyfriend. Appellant reacted irately, and he told Complainant that she was not "respecting him" by answering the call.

Appellant then began punching Complainant in the face and ribs causing a black eye, bruising[,] and a broken lip. Appellant drove Complainant to the hospital emergency room and then dropped her off at her mother's house after her hospital discharge. The next day, a third party sent Complainant a Facebook Live video stream, which had featured Appellant and another male brandishing guns as they were parked in a vehicle facing the Complainant's [current] boyfriend's home. The Complainant recognized Appellant in the videos due to his uniquely outstanding forehead tattoos and Nike shoes; she also recognized Appellant's location in the video as near her then current boyfriend's home. (N.T. 8/30/22, p. 64.) Complainant later forwarded photos of

Appellant in his car also parked outside of her home that she had taken on October 13, 2021, her hospital paperwork, and the recordings of the Facebook Live videos that she had received to the Probation Department.

In response to these alarming events, Appellant's Probation Officer scheduled an in-person check-in meeting with Appellant at the Probation Department office for October 19, 2021, to address Complainant's claims. Despite Appellant's confirmation of the reporting date, and verification that the meeting would not conflict with his work, Appellant failed to appear as directed. Subsequently, on October 20, 2021, the Probation Department duly issued wanted cards due to Appellant's failure to report as directed and in response to violence reports that had been received.

On October 27, 2021, this court scheduled Appellant to appear for an emergency violation hearing. When Appellant failed to appear despite notification, this court immediately issued a bench warrant for his arrest. That day, Complainant forwarded pictures of damages to her car, [which] she alleged had been caused by Appellant, to the Probation Department. On November 6, 2021, Appellant had also texted Complainant, threatening her and stating that he had known that she had reported him to the police department. Appellant forwarded to the Probation Officer copies of these texts and a photograph that had apparently sent by Appellant notifying her that once again he had been in a vehicle parked outside of her home.

During this extended . . . absconding period, Appellant continued to maintain regular contact with Complainant, and even cohabitated with her from February 2022 to April 2022[,] in flagrant violation of this court's order and judgment of sentence. *Id.* [at] 69. Appellant would regularly send Complainant threatening text messages and would threaten to harm her or their children if she ever reported him to law enforcement. Complainant frequently recorded her interactions with Appellant and forwarded her documentation of those interactions to the Probation Department.

During one instance, from February 4, 2022, it was reported that Appellant had contacted Complainant asking to borrow her car. When she refused, Appellant became irate and damaged the front and rear windshields of her vehicle. Complainant witnessed the damage as it happened through the live video camera feed and

forwarded screenshots from the recorded video. (N.T. 8/30/22, pp, 65-66). Ultimately, on May 6, 2022, Complainant visited the Probation Department in person and filed a formal complaint against Appellant. At this time, she also provided the Probation Department with a duly issued Temporary Protection from Abuse Order against Appellant that she had obtained from filing of a *pro se* Petition with the Court of Common Pleas First Judicial District of Pennsylvania Family Division.

City of Philadelphia uniformed Police Officers finally apprehended Appellant on June 17, 2022, following the execution of an arrest warrant . . . .

* * *

On August 30, 2022, this court held a violation/revocation hearing . . . Appellant's Probation Officer testified to the above-mentioned facts. Relevant testimony and supporting physical evidence had been introduced including evidence of Complainant's reported injuries from October 13, 2021; evidence of the repeated damage to Complainant's vehicle; and the recordings of the Facebook Live videos which portrayed Appellant brandishing firearms. The recordings of the Facebook Live videos displayed the top of Appellant's head, as indicated by his distinct tattoos before cutting to two individuals sitting in a vehicle holding firearms.

* * *

At the November 22, 2022 bifurcated hearing, further testimony was provided by the Complainant, who related that since the last violation hearing, Appellant's friends and family had been constantly contacting her on his behalf, threatening her, and damaging her property. . . .

Per agreement, this court heard *in camera* testimony from Appellant and Complainant's young daughter, A.B. This court conducted a full competency colloquy and determined that A.B. was competent to testify; Appellant raised no objection. A.B testified about Appellant's repeated violence and abuse of Complainant and her family. She relayed a particularly alarming event when Appellant had been driving a vehicle with her, the Complainant, and her younger baby brother seated as passengers travelling on Pennsylvania I-95. She testified most credibly that Appellant became irate with Complainant and started assaulting her inside the car as he drove erratically on this busy highway.

Appellant's daughter anxiously described in detail how Appellant repeatedly struck Complainant in the face while driving at a high, aggressive rate of speed. She relayed quite convincingly the sheer terror that she had experienced. She verbalized her fear that Appellant was going to kill her, himself, her mother, and her baby brother through his recklessness on the highway. She further informed this court that when police officers had inevitably stopped Appellant, he had lied to the officers and told them that Complainant had hurt her face on the dashboard when he suddenly stopped the car to pull over to the side of the road. Her mother did not protest and feigned an anxiety attack to the officers in support of his story.

Appellant called his adult sister, Yohenied Burgos, to testify on his behalf. Ms. Burgos admitted that Appellant had been in contact with Complainant but alleged that the contact had been mutually consensual. She acknowledged that her brother and the Complainant had a rocky relationship but maintained that the Complainant had been at fault. Upon inquiry, Ms. Burgos was unable to corroborate Appellant's claim to his Probation Officer that he was working at a bakery.

Appellant admitted to his violating contact with Complainant in an attempted to excuse this behavior by saying that he had wanted to see his children. Appellant again denied all wrongdoing, and instead alleged that Complainant and his daughter were lying to imprison him. (N.T. 11/[22]/22, pp. 66-68). At the close of the evidentiary hearings, this court revoked Appellant's probation and scheduled a sentencing hearing for January 30, 2023. A Presentence Investigation Report and Mental Health Evaluation were ordered and completed.

At sentencing, this court incorporated into the record a full review of the Presentence Investigation Report, the Mental Health Evaluation, and of the sentencing guidelines. Appellant's mother and sister testified and sought leniency and release on his behalf. Complainant declined to testify but instead offered a victim impact statement which this court had read aloud into the record. Appellant admitted that he had been wrong for contacting Complainant but again denied committing any other transgression, and instead lodged a litany of accusations against . . . Complainant. After a full review of Appellant's prior record, the relevant sentencing factors, and the recommended sentencing guidelines, and of the events that had underpinned the revocation of his probation, this court sentenced Appellant to an aggregate

term of seven and a half (7.5) years to fifteen (15) years of state supervised confinement with protective and . . . rehabilitative conditions. Credit for custodial time was accorded and the Appellant was deemed to be not eligible for "RRRI" early release programs.

Trial Ct. Op., 7/28/23, at 4-10 (some formatting altered and footnotes omitted).

Appellant filed a motion for reconsideration of his sentence, which the trial court denied, and Appellant filed a timely appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issue:

Because it is a fundamental sentencing norm that every defendant be given a sentence with consideration of their rehabilitative needs, where the revocation court gave no consideration to [Appellant's] need for employment, housing, and drug treatment, was the sentence excessive, violative of the Sentencing Code, and the norms that underlie the sentencing process?

Appellant's Brief at 3.[4]

---

[4] In **Commonwealth v. Foster**, 214 A.3d 1240 (Pa. 2019), our Supreme Court examined the statutory framework governing probation revocations and concluded that "a court may find a defendant in violation of probation only if the defendant has violated one of the specific conditions of probation included in the probation order or has committed a new crime." **Id.** at 1250 (formatting altered); **see also Commonwealth v. Koger**, 295 A.3d 699 (Pa. 2023); 42 Pa.C.S. §§ 9754(b), 9771. "To insure that general condition is met, or to assist the defendant in meeting that general condition, the order must also include certain specific conditions" of probation. **Foster**, at 1250 (formatting altered); **see also Koger**, 295 A.3d at 705; 42 Pa.C.S. § 9763.

Only upon the violation of any of the specified conditions in the probation order (general or specific) may a court revoke the defendant's probation. In other words, a court may find a

*(Footnote Continued Next Page)*

Appellant argues that the trial court imposed a manifestly excessive sentence and failed to consider mitigating factors, Appellant's rehabilitative needs, and factors involving sentences of total confinement under 42 Pa.C.S. §§ 9721(b) and 9771. **See** Appellant's Brief at 7-8, 10-12.

Appellant's issue implicates the discretionary aspects of his sentence. **See Commonwealth v. Ferguson**, 893 A.2d 735, 736-37 (Pa. Super. 2006) (providing that claims the trial court abused its discretion in imposing a sentence of total confinement upon revocation of probation and imposed an excessive sentence challenged the discretionary aspects of the sentence).

Initially, we note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute[.]" **Commonwealth v. Zirkle**, 107 A.3d 127, 132 (Pa. Super. 2014) (citations omitted). Rather, where an appellant challenges the discretionary aspects of a sentence, the "appeal should be considered a petition for allowance of appeal." **Commonwealth v. W.H.M., Jr.**, 932 A.2d 155, 163 (Pa. Super. 2007) (citation omitted).

---

defendant in violation of probation only if the defendant has violated one of the specific conditions of probation included in the probation order or has committed a new crime. The plain language of the statute does not allow for any other result.

**Foster**, 214 A.3d at 1250 (citations, footnote, and quotation marks omitted). Here, Appellant does not challenge the finding of a probation violation nor the revocation of his probation. Appellant's sole claim is that his revocation of probation sentence is excessive. **See** N.T., 11/22/22, at 62-66 (reflecting that Appellant stated that he contacted Complainant which was a violation of the conditions of his probation); Trial Ct. Op., 7/28/23, at 15 n.6; **see also** Appellant's Brief at 3, 10; Pa.R.A.P. 1925(b) Statement, 3/23/23.

- 9 -

In **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010), this Court explained that an appellant challenging the discretionary aspects of a sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [708(E)]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

**Id.** at 170 (citation omitted and formatting altered). The determination of whether there is a substantial question is decided on a case-by-case basis, and this Court will grant the appeal "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Id.** (citation omitted).

Here, Appellant preserved his issue in a post-sentence motion for reconsideration, filed a timely appeal, and included a Rule 2119(f) statement in his appellate brief. **See id.** Appellant has also raised a substantial question for review. **See Commonwealth v. Derrickson**, 242 A.3d 667, 680 (Pa. Super. 2020) (holding that a claim that the trial court failed to consider sentencing criteria pursuant to 42 Pa.C.S. § 9721(b), including the defendant's rehabilitative needs, presents a substantial question); **Ferguson**, 893 A.2d at 736-37 (concluding that a claim that the trial court erred in its

application of Section 9771 and that the revocation sentence imposed was manifestly excessive raised a substantial question). Therefore, we will address the merits of Appellant's sentencing claim.

Our standard of review is as follows:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment – a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Starr*, 234 A.3d 755, 760-61 (Pa. Super. 2020) (citation omitted). Section 9721(b) provides, in relevant part, that "the sentence imposed should call for total confinement that is consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

The court shall not impose a sentence of total confinement upon revocation unless it finds that: (1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c) (formatting altered). Before the trial court may revoke probation, the court must find, "based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a

new crime[.]" ***Commonwealth v. Parson***, 259 A.3d 1012, 1019 (Pa. Super.
2021) (citations omitted).

> In addition, in all cases where the court resentences an offender
> following revocation of probation[,] the court shall make as a part
> of the record, and disclose in open court at the time of sentencing,
> a statement of the reason or reasons for the sentence imposed
> and failure to comply with these provisions shall be grounds for
> vacating the sentence or resentence and resentencing the
> defendant.

***Commonwealth v. Colon***, 102 A.3d 1033, 1044 (Pa. Super. 2014) (citations
omitted and formatting altered); ***see also*** 42 Pa.C.S. § 9721(b); Pa.R.Crim.P.
708(D)(2) (indicating at the time of sentence following the revocation of
probation, "[t]he judge shall state on the record the reasons for the sentence
imposed").  However, the "trial court need not undertake a lengthy discourse
for its reasons for imposing a sentence or specifically reference the statute in
question, but the record as a whole must reflect the sentencing court's
consideration of the facts of the crime and character of the offender." ***Colon***,
102 A.3d at 1044 (citation omitted).

> Simply put, since the defendant has previously appeared before
> the sentencing court, the stated reasons for a revocation sentence
> need not be as elaborate as that which is required at initial
> sentencing.  The rationale for this is obvious.  When sentencing is
> a consequence of the revocation of probation, the trial judge is
> already fully informed as to the facts and circumstances of both
> the crime and the nature of the defendant, particularly where, as
> here, the trial judge had the benefit of a [presentence
> investigation (PSI) report] during the initial sentencing
> proceedings.  ***See*** [***Commonwealth v.***] ***Walls***, 926 A.2d [957,]
> 967 n.7 [(Pa. 2007)] ("Where [a PSI report] exist[s], we shall
> continue to presume that the sentencing judge was aware of the
> relevant information regarding the defendant's character and

weighed those considerations along with mitigating statutory factors." [(citation omitted)]).

***Commonwealth v. Pasture***, 107 A.3d 21, 28 (Pa. 2014).[5]  "[O]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing."  ***Parson***, 259 A.3d at 1019 (citations omitted and formatting altered); ***see also*** 42 Pa.C.S. § 9771(b).

Here, at sentencing, the trial court heard from Appellant's sister, his mother, and from Appellant.  ***See*** N.T., 1/31/23, at 14, 20, 33.  After hearing from Appellant and his family, the trial court set forth its considerations and the rationale for the sentence imposed.  ***See id.*** at 41-66.  Specifically, the trial court addressed and considered in depth, Appellant's juvenile adjudication history, adult criminal history, rehabilitative needs including drug and alcohol issues, physical and mental health concerns, need for anger management, and Appellant's failures in previous attempts at rehabilitation while on probation.  ***See id.*** at 41-60.

In its opinion, the trial court thoroughly addressed Appellant's challenge to the discretionary aspects of his sentence, addressed the required sentencing factors at 42 Pa.C.S. § 9721(b), and reiterated the reasons for the sentence that was imposed.  ***See*** Trial Ct. Op., 7/28/23, at 15-22.  The trial

---

[5] The record reflects that the trial court had the benefit of a PSI when it imposed the revocation sentence.  ***See*** N.T., 1/31/23, at 5.

court explained that it considered Appellant's PSI and mental health report, the facts of the case, Appellant's history, Appellant's failure to abide by the terms of his probation, Appellant's danger to the community, and determined that Appellant lacked respect for the trial court and other legal authority. **See id.** at 15-18. The trial court further explained that sentencing guidelines do not apply to Appellant's revocation sentence, and noted that even if they did apply, the trial court was within its discretion to impose a sentence outside the guidelines.[6] **See id.** at 13-14, 18, 22.

Following our review of the record, we discern no abuse of discretion by the trial court. **See Starr**, 234 A.3d at 760-61; **Ferguson**, 893 A.2d at 739. The trial court considered the factors in 42 Pa.C.S. § 9721(b), including

---

[6] The trial court noted that the sentencing guidelines do not apply to sentences imposed following the revocation of probation. **See** Trial Ct. Op., 7/28/23, at 13. However, we explicate the trial court's discussion with the caveat that the newly promulgated resentencing guidelines do indeed apply to revocation of probation sentencing, but not instantly because Appellant's underlying crime was committed prior to January 1, 2020. **See** 204 Pa.Code § 307.2; **Commonwealth v. Fitzgerald**, 468 EDA 2021, 2022 WL 1015141, at *3 n.6 (Pa. Super. filed Apr. 5, 2022) (unpublished mem.) (stating that "[t]he resentencing guidelines . . . do not apply here because [the defendant] committed his underlying offenses before January 1, 2020" (citation omitted)); **see also** Pa.R.A.P. 126(b) (stating that we may cite to unpublished memoranda filed after May 1, 2019 for its persuasive value). Here, the trial court stated that even if the sentencing guidelines applied, "a sentencing court may deviate from the guidelines as necessary to 'fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community.'" Trial Ct. Op., 7/28/23, at 14 (quoting 42 Pa.C.S. § 9721(b)). We observe that the trial court further explained that even though it was not required to do so in this case, it had considered and evaluated the sentencing guidelines before crafting its sentence. **See** N.T., 1/31/23, at 63.

Appellant's rehabilitative needs, the facts of the crime, and the need to protect the public. *See* N.T., 1/31/23, at 5, 41-66; *see* Trial Ct. Op., 7/28/23, at 14, 22. Additionally, the trial court ordered a PSI report and a mental health evaluation, which it reviewed prior to sentencing. *See* N.T., 1/31/23, at 5. Accordingly, we may "presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Pasture*, 107 A.3d at 28 (citation omitted). For these reasons, Appellant is not entitled to relief, and we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/11/2024